# Exhibit B

# REFCO

Refco Capital Markets, Ltd.

## CUSTOMER AGREEMENT
## Securities Account

We are pleased to advise you that Refco Capital Markets, Ltd. ("Refco") is prepared to make available to you a facility for executing and financing Transactions introduced to Refco on your behalf by Refco Securities, LLC ("RSL") from time-to-time in various financial instruments (including, without limitation, securities, instruments, and all derivatives thereon) ("Financial Instruments") as may be agreed between us, subject in all cases to the following standard terms and conditions which shall apply to each Transaction existing on or entered into after the date of your acceptance of this agreement (the "Agreement").

### A. AUTHORIZATION

**1. Authority to Act.** You hereby authorize Refco to purchase, sell, borrow, lend, pledge or otherwise transfer Financial Instruments (including any interest therein) for your account in accordance with your oral or written instructions. You hereby waive any defense that any such instructions were not in writing as may be required by any law, rule, or regulation. The authority hereby conferred shall remain in force until written notice of its revocation is received by Refco. Refco shall be under no duty or obligation to inquire into the purpose or propriety of any instruction given by you and shall be under no obligation concerning the application of any funds delivered to you upon your order. Except to the extent you have expressly authorized someone else to buy, sell and otherwise effect Transactions on your behalf and for your account, all Transactions introduced to Refco by RSL on your behalf and entered into pursuant to this Agreement shall be initiated orally or in writing by you. All securities and other financial instruments delivered by you to Refco shall be in good deliverable form.

**2. Additional Authority.** In case of the sale of any Financial Instrument at your direction and Refco's inability to deliver the same to the purchaser by reason of your failure to supply Refco therewith, then and in such event, you authorize Refco, in its discretion to borrow or to buy-in any instrument or other property necessary to make delivery thereof, and you will be responsible for any loss which Refco may sustain thereby and any premiums which Refco may require to pay thereon, and for any loss which Refco may sustain by reason of its inability to borrow or to buy-in such instrument or other property. If not appearing in your account by the date a Transaction is entered, Financial Instruments with respect to which you place orders to sell must appear in the account by the settlement date of the Transaction.

### B. MARGIN

This Margin section applies in the event Refco finances any of your Transactions from time-to-time in Financial Instruments.

**1. Security Interest.** Refco reserves the right to require the deposit or maintenance of collateral (consisting of cash, United States government obligations or such other marketable securities or other property which may be acceptable to Refco) to secure performance of your obligations to Refco. Refco will advise you of the initial collateral requirement and of the amount of additional collateral required to be maintained from time-to-time. Such collateral requirements may be changed from time-to-time by Refco with respect to both new and outstanding Transactions, without notice, and Refco may value non-U.S. Dollar collateral on any reasonable basis. Additional collateral must be received by Refco within one business day of a demand. To secure your obligations under Transactions entered into pursuant to this Agreement, you hereby grant to Refco and its affiliates (collectively, "Refco Entities") a first priority, perfected security interest in all of your cash, securities and other property (whether held individually or jointly with others) and the proceeds thereof from time-to-time in the possession or under the control of such Refco Entities, whether or not such cash, securities and other property were deposited with such Refco Entities. Insofar as a security interest is granted to Refco Entities in any collateral in the possession of any affiliate of Refco, such affiliate shall act for itself and as agent for Refco. Insofar as a security interest is granted under any other agreement to any affiliate of Refco in collateral in the possession of Refco, Refco shall act for itself and as agent for such affiliate.

**2. Rights and Use of Margin.** Refco shall have the right to loan, pledge, hypothecate or otherwise use or dispose of such cash, securities and other property free from any claim or right, until settlement in full of all Transactions entered into pursuant to this Agreement. Refco's sole obligation shall be to return to you such cash, like amounts of similar cash, securities and other property (or the cash value thereof in the event of any liquidation of collateral) to the extent they are not deemed to be collateral to secure Transactions entered into pursuant to this Agreement with any Refco Entities or have not been applied against obligations owing by you to Refco Entities, whether as a result of the liquidation of positions and any Transactions entered into pursuant to this Agreement or otherwise. Refco shall have all of the rights of a secured party with respect to all collateral. Additionally, Refco may, in its discretion, without prior notice to you, apply or transfer any cash, securities or other property interchangeably between any of your accounts at Refco or any affiliate of Refco as may be deemed necessary for margin or to satisfy or reduce any deficit or debit balance in any such account. All cash, securities or other property held by Refco are to be held by Refco as security and subject to a general lien and right of set-off for all your obligations to any Refco Entity.

### C. PRIME BROKERAGE

This section applies in the event you choose to utilize Refco as your clearing, financing and settlement agent ("prime broker"). Your choice of Refco as a prime broker should be indicated in Section H at the beginning of this Agreement. Where such election is subsequent to execution of this Agreement, please fax notice of such election to Refco.

8/00 Version

1.  *Designation of Executing Brokers.* You may authorize and request Refco to establish prime brokerage account relationship(s) with one or more Executing Brokers designated by you as such on <u>Annex A</u> at the end of this Agreement. You may request the addition of Executing Brokers from time to time by faxing notification of such amendments to Refco.

2.  *Conformity With Regulatory Requirements.* Executing Brokers will be responsible for ensuring that all Transactions comply with all applicable laws, rules and regulations, and Refco shall have no responsibility in this regard.

3.  *Trading Limitations.* Refco reserves the right at any time to place a restriction expressed in currency types, amounts, number of Financial Instruments or otherwise, that Refco will accept for clearance and settlement ("restrictions"). Refco may at any time or place amend previously existing restrictions at its discretion. If after you have received notice of such restriction and you execute an order in excess of the restriction, Refco shall have the right, in its sole discretion, to decline to accept the Transaction for clearance and settlement. In the event any claim is asserted against Refco by the Executing Broker because Refco declined to accept the Transaction pursuant to this sub-paragraph 3., you agree to indemnify and hold Refco harmless from any loss, liability, damage, claim, cost or expense (including, but not limited to, fees and expenses of legal counsel) arising directly or indirectly herefrom.

4.  *Fees.* You shall pay all prime brokerage fees agreed to by you and Refco in accordance with a fee schedule provided by Refco.

5.  *Confirmations, Clearance and Settlement.* Executing Brokers will send confirmations of all Transactions to you and to Refco immediately after the execution of such Transactions. Refco will confirm with you all Transactions executed on your behalf and reported by Executing Brokers at the close of each business day, and will thereby agree to accept responsibility for settling all Transactions affirmed by you. The delivery and receipt of Financial Instruments shall occur at the times and places and in the manner as Refco and Executing Brokers shall agree. Notwithstanding the foregoing, Refco will not be responsible for (and you agree to hold Refco harmless with respect to) any Transactions renounced or rejected by Executing Brokers or with respect to which Executing Brokers are in default. Refco may undertake to resolve any unmatched trades; however, you shall be responsible for the ultimate resolution thereof. Refco shall have no responsibility with respect to trade data not correctly transmitted to Refco on a timely basis by any person or entity.

6.  *Disaffirmance of Trades and Effect Thereof.* Refco may disaffirm trades if it determines to do so in good faith and in accordance with reasonable commercial standards. Without limiting such circumstances, a disaffirmance shall be deemed to be made in good faith and in accordance with reasonable commercial standards, if made by reason of: (i) Refco's determination that there would not be enough collateral in your account to settle the relevant trade or that a maintenance margin call would be required as a result of settling such a trade; (ii) the trade's exceeding any restriction on trades imposed by Refco on Transactions; (iii) Refco's determination that the continuation of prime brokerage services to you presents an unacceptable regulatory, financial or reputational risk to Refco, taking into consideration all of the facts and circumstances; or (iv) Refco's determination that it does not have the required facilities or relationships to clear your trades. If Refco disaffirms a trade, Refco shall not have settlement responsibility for the disaffirmed trade and Executing Broker shall be solely responsible for settling such trade.

7.  *Termination of Relationship With Executing Broker.* You will notify Refco immediately by fax in the event of termination for any reason of your prime brokerage relationship with any Executing Broker. Refco will notify you in the event of a termination of its prime brokerage relationship with any of your Executing Brokers. The settlement of any Transaction by the terminated (or terminating) Executing Broker upon your order after the effectiveness of the termination shall be the sole responsibility of the Executing Broker. If pursuant to your request, Refco agrees to clear and settle any trades executed by such Executing Broker and reported to Refco for clearance and settlement after such termination, you agree to indemnify and hold Refco harmless from any loss, liability, damage, claim, cost or expense (including, but not limited to, fees and expenses of legal counsel) arising directly or indirectly in connection with Refco's agreement to settle such trades.

8.  *Termination of Your Prime Brokerage Relationship with Refco.* Refco may terminate this prime brokerage relationship at any time for any reason by giving notice of termination to you and Executing Brokers. You may terminate this prime brokerage relationship at any time for any reason by giving notice of termination to Refco and Executing Brokers. Such notice having been given by you or Refco, the clearance and settlement of any trade subsequently executed by an Executing Broker upon your order shall be the sole responsibility of the Executing Broker and such trade shall be disaffirmed by Refco.

D.  <u>NETTING</u>

1.  *Confirmation Procedures.* Transactions governed by the Agreement shall be promptly confirmed in writing by the parties ("Confirmations") exchanged by mail, telex, facsimile or other electronic means. In relation to Confirmations, unless you object to the terms contained in any Confirmation within two (2) business days of receipt thereof, or such shorter time as may be appropriate, the terms of such Confirmation shall be deemed correct and accepted absent manifest error unless otherwise agreed. The failure by a party to issue a Confirmation shall not prejudice or invalidate the terms of any Transaction governed by the Agreement.

2.  *Single Agreement.* This Agreement (and, insofar as such terms are recorded in a Confirmation, each such Confirmation) and all amendments to any of such items which together form the Agreement between the parties shall together constitute a single agreement between the parties. The parties acknowledge that all Transactions governed by the Agreement are entered into in reliance upon the fact that all items constitute a single agreement between the parties.

3.  *Scope of the Agreement.* Unless otherwise agreed in writing by the parties, each Transaction between the parties outstanding on the execution date of this Agreement shall be a Transaction governed by the Agreement and every obligation of the parties thereunder shall be an obligation under the Agreement. In addition, all Transactions entered into between the parties on or after the execution date of this Agreement shall be governed by the Agreement.

4.  *Net Settlement / Payment Netting.* The parties agree that upon the entering of Transactions calling for the delivery and receipt on the same day of: (i) the same security; (ii) the same currency; or (iii) the same security and the same currency, each party shall aggregate the amounts of such security or currency deliverable by it and only the difference between these aggregate amounts shall be delivered by the party owing the larger aggregate amount of either the security or the currency to the other party, and, if the aggregate amounts are equal, no delivery of the security or currency shall be made.

E. **DEFAULT**

1. *Events Of Default.* If you: (i) fail to perform your obligations with respect to any Transaction with Refco Entities; (ii) become insolvent or subject to voluntary or involuntary proceeding seeking liquidation, reorganization or other similar relief, or, become a debtor in any case under any bankruptcy law not discharged or terminated for thirty (30) days; (iii) disaffirm, disclaim or repudiate any obligation hereunder; (iv) make any representation or warranty that proves to have been false or misleading in any material respect as at the time it was made or given; (v) become unable to pay debts as they become due; (vi) fail to honor a request for collateral; (vii) if you are an individual, you die or are declared judicially incompetent; (viii) Refco Entities believe that they may not be able to apply property that they are holding or expect to receive from you against obligations; or (ix) if such Refco Entities deem reasonably necessary for their protection, you will be a Defaulting Party, and such Refco Entities shall be a Non-defaulting Party.

2. *Remedies.* If an Event of Default as set forth above has occurred and is continuing, Refco Entities, in their sole discretion and without notice, may close-out and liquidate any of your outstanding obligations (except to the extent that in the good faith opinion of the Refco Entities certain of such obligations may not be closed-out and liquidated under applicable law). Such obligations may include those by and between the Refco Entities under this or any other agreement, with you or any of your affiliates. Close-out and liquidation shall include, the sale by Refco Entities of any and all property held in any or all of your account(s) with Refco Entities, and the purchase by Refco Entities, in their discretion and without notice any or all property which may be short in such account(s). Such purchases and sales may, in such Refco Entities' sole discretion, be public or private and may be made without notice or advertisement and in such manner as such Refco Entities in their discretion may determine, at any time or times thereafter. At any such sale or purchase, Refco Entities may purchase or sell the property free of any right of redemption. The Refco Entities shall in good faith calculate the amount owed by or to you, which shall include any resulting loss, costs, interest and expenses, and/or, shall realize upon property securing any obligation to such Refco Entities. Any grace or notice period required by agreement or custom prior to exercise of such remedies may be shortened or eliminated by any such Refco Entity if such Refco Entity determines in its sole discretion, that it is reasonable to do so under the circumstances.

Except as may otherwise be agreed between the parties (which agreement may be reflected in a Confirmation from one party to the other), upon close-out and liquidation, the receipt or recovery by either party of any amount in respect of an obligation of the other in a currency other than U.S. Dollars shall discharge such obligation only to the extent that on the business day immediately following receipt of such amount, the recipient shall be able, in accordance with normal banking procedures, to purchase U.S. Dollars with the currency received; and otherwise, the obligor shall, as a separate obligation and notwithstanding any judgment of any court, indemnify the recipient against any loss sustained. The obligor shall in any event indemnify the recipient against any costs incurred by it in making any such purchase of U.S. Dollars. Upon close-out and liquidation of the entire account or the entire accounts, the Non-defaulting Party shall net all such amounts calculated above to a single liquidated amount payable by one party to the other party

3. *Set-Off.* Refco Entities' rights under this section shall be in addition to, and not in limitation or exclusion of, any other rights which Refco Entities may have (whether by agreement, operation of law or otherwise). To the extent not prohibited by applicable law, Refco Entities shall have a general right of set-off (including, the right to set-off against any collateral held pursuant to the Margin section hereto or property securing any obligations to Refco Entities) with respect to all amounts owed by Refco Entities to you or any of your affiliates whether or not due and payable (provided that any amount not due and payable at the time of such set-off shall, if appropriate, be discounted to present value in a commercially reasonable manner).

F. **REPRESENTATIONS AND WARRANTIES**

As an inducement to Refco and RSL to enter into this Agreement, you represent and warrant to Refco and RSL as of the date hereof and as of the date of each Transaction hereunder that:

(i) you are duly organized and validly existing in good standing under the laws of the jurisdiction of your incorporation and are duly qualified to do business and are in good standing in each other jurisdiction in which such qualification is required (except where the failure to so qualify would not have a material adverse effect on ability to perform obligations under this Agreement and such Transaction); (ii) you have full power and authority (corporate or other) to execute and deliver this Agreement, to enter into such Transaction and perform obligations hereunder; (iii) execution and delivery of this Agreement, entering into such Transaction and the performance of obligations hereunder have been duly authorized by all requisite corporate action;   (iv) all authorizations of and exemptions, actions, approvals and consents by, and all notices to or filings with, any governmental or other authority or other person that are necessary to enable execution and delivery of this Agreement, entering into such Transaction and performing obligations hereunder have been obtained or made and are in full force and effect, and you have complied with all the conditions thereof; (v) this Agreement has been duly executed and delivered; (vi) this Agreement and such Transaction are legal, valid and binding obligations, enforceable against you in accordance with their respective terms; (vii) execution and delivery of this Agreement and performance of this Agreement and such Transaction do not and will not violate or conflict with any law, regulation, rule of a self-regulatory organization or judicial or governmental order or decree to which you are subject, any provision of your constitutional or governing documents, or any term of any agreement to which you are a party or by which you or your property or assets are bound or affected; (viii) no default has occurred and is continuing with respect to you and no event has occurred or circumstance arisen which might constitute, or with the giving of notice or the passage of time (or both) might become, a default on your part; (ix) you act as principal in entering into and exercising such Transaction and no other person or entity has any interest in or control of any Transaction purchased, sold or exercised for your account; (x) you have carefully reviewed the various risks of entering into Transactions and you understand and are willing and able, financially and otherwise, to assume such risks. If the provisions set forth in the Margin section are applicable, you also represent that: (xi) you have the power under the laws of the jurisdiction of organization or incorporation and under all organizational documents to grant a security interest in any property you may transfer as collateral and will be the sole owner of such property, free and clear of any security interest, lien, encumbrance or other restrictions other than the pledge and security interest granted hereby. Upon transfer by you of any property as collateral, Refco Entities will have a valid and perfected first priority security interest and first lien in such collateral.

Each representation and warranty made by you pursuant to this Agreement shall survive the purchase, sale, liquidation or offset of any Transaction and the termination of this Agreement.

G. **MISCELLANEOUS**

1. *Respective Status of Refco and RSL.* Refco and RSL are all wholly owned subsidiaries of the Refco Group Ltd., LLC, a US corporation. RSL is a US corporation and

a broker-dealer registered with the US Securities and Exchange Commission. Refco is a Bermuda corporation. Described below are the respective roles and functions of these entities depending on the nature of Transactions and your location.

*Trades Executed At Refco –*

- If you are a US person – RSL introduces your executions and financing Transactions to Refco. RSL acts as agent for both you and Refco.

- If you are a non-US person – RSL introduces your executions and financing Transactions to Refco.

*Trades Executed Away From Refco, but cleared by Refco (Prime Brokerage)* – Refco acts as your clearing, settlement and financing agent (your prime broker) in connection with Transactions executed at your Executing Broker(s). Where Refco is acting as your prime broker, no Refco entity is involved in executing Transactions.

You acknowledge and agree that a portion of the compensation Refco receives for effecting Transactions hereunder (including, without limitation, any mark-ups or mark-downs charged by Refco) may be paid to RSL, along with any agency fee that RSL may charge.

2. ***Consent to Record.*** You hereby irrevocably consent to the recording of any and all telephone conversations with the personnel of Refco or RSL. Such recording may be achieved by Refco or RSL at any and all times without the necessity of requesting such consent on each specific occasion. You hereby consent to the use of such recording at any court or arbitration proceeding regarding business related matters between you and Refco or RSL at all times, including after having closed relevant accounts with Refco.

3. ***Notices and Other Communications.*** You hereby agree to provide prompt written notice to Refco and RSL in the event that any of the information you have provided to Refco or RSL in this Agreement is no longer accurate. Each party may by notice to the other parties change the address or number at which notices or communications are to be given to it.

4. ***Costs of Collection.*** In the event that Refco must employ counsel or a collection agency to collect any debit balance which you owe, you hereby authorize it to charge you for the reasonable costs of collection, court costs and any expenses (including fees and disbursements of counsel, including attorneys who may be employees of the Non-defaulting Party) whatsoever in nature incurred in effecting said collection.

5. ***Reasonable Pre-Estimate.*** The parties agree that the amounts recoverable under this Agreement are a reasonable pre-estimate of loss and not a penalty. Such amounts are payable for the loss of bargain and the loss of protection against future risks and, except as otherwise provided in the Agreement, neither party will be entitled to recover any additional damages as a consequence of such losses.

6. ***Successors and Assigns.*** You hereby agree that this Agreement and all the terms hereof shall be binding upon your successors, heirs, executors, administrators, personal representatives, affiliates and permitted assigns. You agree that you may not assign this Agreement without the express written consent of Refco.

7. ***Termination.*** Refco may terminate this Agreement for any reason at any time immediately upon notice to you. Any oral notice of termination shall be promptly confirmed in writing.

8. ***Tax Information.*** Refco agrees, subject to applicable laws, regulations, and treaties, to collect all dividends and interest on your behalf and furnish you with all relevant tax reporting information (including withholding information).

9. ***Headings.*** Headings in the Agreement are for ease of reference only.

10. ***Waiver of Jury Trial.*** You hereby irrevocably waive any and all right to trial by jury in any suit, action or other proceedings relating to this Agreement or Transactions hereunder.

H.   **LAW AND JURISDICTION**

This Agreement shall be governed by and construed with New York law and you agree that the courts of New York, located in the Borough of Manhattan (Federal or State), are to have jurisdiction to settle any disputes which may arise out of or in connection with this Agreement. Any suit, action or proceedings arising out of or in connection with this Agreement ("Proceedings") commenced by you, may only be brought in New York. Refco may take proceedings against you in New York (Federal or State) or any other court of competent jurisdiction, US or otherwise. The taking of Proceedings by Refco in one or more jurisdictions does not preclude the taking of Proceedings by Refco in any other jurisdiction, whether concurrently or not. You irrevocably waive (and irrevocably agree not to raise) any objection which you may have now or subsequently to Refco's laying of the venue of any Proceedings in any court and any claim that any such Proceedings have been brought in an inconvenient forum.

Acceptance. Your signature below constitutes your agreement with and acceptance of this Agreement.

Very truly yours,

| REFCO CAPITAL MARKETS, LTD. | REFCO SECURITIES, LLC |
|---|---|
| By: _____ | By: _____ |
| Date: _____ | Date: _____ |
| Address:<br>Rosebank Building<br>12 Bermudiana Road, Second Floor<br>Hamilton, HM 11  Bermuda | Address:<br>One World Financial Center<br>200 Liberty Street, 23rd Floor<br>New York, NY 10281 |

Accepted and agreed this _____ day of _____, 20___.

[ _____ ]

| By: _____ | By: _____ |
|---|---|
| Title: _____ | Title: _____ |
| Address: _____ | Address: _____ |
| _____ | _____ |
| _____ | _____ |