UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
VR GLOBAL PARTNERS, L.P. PATON HOLDINGS :
LTD., VR CAPITAL GROUP LTD., AND VR     :    No. 07 Civ. 8686 (GEL)
ARGENTINA RECOVERY FUND, LTD.,          :
                                        :    FILED ELECTRONICALLY
            Plaintiffs,                 :
                                        :
   - against -                          :
                                        :
PHILIP R. BENNETT, ET AL.,              :
                                        :
            Defendants.                 :
-----------------------------------------------------------------x
CAPITAL MANAGEMENT SELECT FUND          :
LTD., INVESTMENT & DEVELOPMENT          :    No. 07 Civ. 8688 (GEL)
FINANCE CORPORATION, IDC FINANCIAL S.A., :
                                        :
            Plaintiffs,                 :
                                        :
   - against -                          :
                                        :
PHILIP R. BENNETT, ET AL.,              :
                                        :
            Defendants.                 :
                                        :
-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
JOSEPH J. MURPHY'S AND WILLIAM M. SEXTON'S MOTION TO DISMISS**

| | |
|---|---|
| FRIEDMAN & WITTENSTEIN | SHAPIRO FORMAN ALLEN & SAVA LLP |
| A Professional Corporation | 380 Madison Avenue |
| 600 Lexington Avenue | New York, NY 10017 |
| New York, NY 10022 | (212) 972-4900 |
| (212) 750-8700 | |
| *Attorneys for Defendant William M. Sexton* | *Attorneys for Defendant Joseph J. Murphy* |

# TABLE OF CONTENTS

**POINT I**

COUNT I FAILS TO STATE A CLAIM AGAINST SEXTON AND MURPHY
UNDER § 10(B) OF THE EXCHANGE ACT ........................................ 1

    A.    Count I Should Be Dismissed As Against Sexton And Murphy Because
They Are Not Alleged To Have Committed A Deceptive Act ............ 1

        1.    Plaintiffs Fail To Allege With Particularity Any Participation
By Sexton Or Murphy In The RCM Securities Scheme ........ 2

        2.    Plaintiffs Fail To Allege That Sexton Or Murphy Committed
A Manipulative Or Deceptive Act .......................... 4

    B.    Plaintiffs' Allegations Do Not Create A Strong Inference That
Murphy Or Sexton Acted With Scienter ............................. 6

**POINT II**

PLAINTIFFS HAVE NOT PLED A RULE 10B-16 CLAIM
AGAINST MURPHY OR SEXTON ........................................ 10

**POINT III**

PLAINTIFFS HAVE NOT PLED A § 20(A) CONTROL PERSON CLAIM AGAINST
MURPHY OR SEXTON ................................................ 10

    A.    Plaintiffs Have Pled No Facts Demonstrating Actual Control ........... 10

    B.    Plaintiffs Have Pled No Facts Demonstrating Culpable
Participation ................................................ 11

**POINT IV**

PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD
SHOULD BE DENIED AS TO SEXTON AND MURPHY ........................... 12

**CONCLUSION** ..................................................... 15

## TABLE OF AUTHORITIES

**CASES**

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
  No. 07 Civ. 1204, 2008 WL 731971 (S.D.N.Y. Mar 18, 2008) .............. 2, 7

*Acito, Inc. v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ......................................... 9

*American Financial International Group - Asia, LLC v. Bennett*,
  No. 05 CV 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007) ................ 8

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ........................................ 12

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir. 1994) ........................................ 4

*Bankruptcy Trust of Gerard Sillam v. Refco Group, LLC*,
  No. 05 Civ. 10072, 2006 WL 2129786 (S.D.N.Y. July 28, 2006) .............. 15

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ........................................... 11

*Boguslavsky v. Kaplan*,
  159 F.3d 715 (2d Cir. 1998) ....................................... 12

*Burstyn v. Worldwide Xceed Group, Inc.*,
  No. 01 Civ. 1125, 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002) ............. 12

*Decker v. Massey-Ferguson, Ltd.*,
  681 F.2d 111 (2d Cir. 1982) ....................................... 13

*Denny v. Barber*,
  576 F.2d 465 (2d Cir. 1978) ....................................... 13

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................. 14

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000) ....................................... 12

*Gurfein v. Ameritrade, Inc.*,
  411 F. Supp. 2d 416 (S.D.N.Y. 2006) ................................ 3

*In re Alstom S.A. Securities Litigation,*
        406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................ 5

*In re Blech Securities Litigation,*
        961 F. Supp. 569 (S.D.N.Y. 1997) ........................................ 3, 4

*In re Citigroup, Inc. Securities Litigation,*
        330 F. Supp. 2d 367 (S.D.N.Y. 2004) ..................................... 7, 8

*In re Global Crossing, Ltd. Securities Litigation,*
        322 F. Supp. 2d 319 (S.D.N.Y. 2004) .................................... 5, 10

*In re Livent, Inc. Securities Litigation,*
        148 F. Supp. 2d 331 (S.D.N.Y. 2001) ........................................ 8

*In re Refco Capital Markets Brokerage Customer Securities Litigation,*
        No. 06 Civ. 643, 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) ...... 1, 4, 9, 13, 14

*In re Refco, Inc. Securities Litigation,*
        503 F. Supp. 2d 611 (S.D.N.Y. 2007) ............................... 7, 8, 10, 12

*In re Retek Inc. Securities Litigation,*
        No. 02-4209, 2007 WL 14352 (D. Minn. Jan. 3, 2007) ...................... 3

*In re Salomon Analyst Winstar Litigation,*
        No. 02 Civ. 6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) ............... 7, 9

*In re Vivendi Universal, S.A. Securities Litigation,*
        381 F. Supp. 2d 158 (S.D.N.Y. 2003) ........................................ 3

*Katz v. Image Innovations Holdings, Inc.,*
        No. 04 Civ. 0582, 2004 WL 2591946 (S.D.N.Y. Nov. 16, 2004) ............... 6

*Kinsey v. Cendant Corp.,*
        No. 02 Civ. 6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) ................. 7

*Liberty Mutual Insurance Co. v. WAWA Tours, Inc.,*
        No. CV-07-0880, 2007 WL 2743500 (E.D.N.Y. Sept. 18, 2007) ................ 7

*Mooney v. Vitolo,*
        435 F.2d 838 (2d Cir. 1970) ............................................. 14

*Podany v. Robertson Stephens, Inc.,*
        318 F. Supp. 2d (S.D.N.Y. 2004) ......................................... 9

*Pugh v. Tribune Co.,*
        521 F.3d 686 (7th Cir. 2008) ............................................ 5

*Ravens v. Republic New York Corp.*
    No. CIV.A.99-4981, 2002 WL 1969651 (E.D.Pa..2002) ........................ 4

*Rich v. Maidstone Financial, Inc.,*
    No. 98 Civ. 2569, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ................ 3

*Rivera v. Salomon Smith Barney, Inc.,*
    No. 01 Civ. 9282, 2003 WL 222249 (S.D.N.Y. Jan. 30, 2003) ................. 14

*Robbins v. Hometown Buffet, Inc.,*
    No. 94-1655, 1995 WL 908194 (S.D.Cal. Mar. 16, 1995) ...................... 11

*Ross v. Bolton,*
    904 F.2d 819 (2d Cir. 1990) ............................................. 3

*Rubinstein v. Skyteller, Inc.,*
    48 F. Supp. 2d 315 (S.D.N.Y. 1999) ...................................... 11

*Securities and Exchange Commission v. First Jersey Securities, Inc.,*
    101 F.3d 1450 (2d Cir. 1996) ............................................ 4

*Shapiro v. Cantor,*
    123 F.3d 717 (2d Cir. 1997) ............................................. 4

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,*
    128 S. Ct. 761 (2008) ................................................... 5

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc.,*
    No. 05 Civ. 1898, 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005) ............... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007) ............................................... 7, 10

*Three Crown Limited Partnership v. Caxton Corp.,*
    817 F. Supp. 1033 (S.D.N.Y. 1993) ....................................... 2

*Treppel v. Biovail Corp.,*
    No. 03 Civ. 3002, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) .............. 15

*Wallace v. Buttar,*
    239 F. Supp. 2d 388 (S.D.N.Y. 2003) ..................................... 10

*Wright v. Ernst & Young, LLP,*
    152 F.3d 169 (2d Cir. 1998) ............................................. 4

Defendants Joseph J. Murphy ("Murphy") and William M. Sexton ("Sexton") respectfully submit this Reply Memorandum of Law in further support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act ("PSLRA") to dismiss the claims asserted against them in the VR Action and the CM Action.[1]

### POINT I

### COUNT I FAILS TO STATE A CLAIM AGAINST SEXTON AND MURPHY UNDER § 10(B) OF THE EXCHANGE ACT

**A.    Count I Should Be Dismissed as Against Sexton and Murphy Because They Are Not Alleged To Have Committed a Deceptive Act**

Our Moving Brief demonstrated that the VR Plaintiffs failed to allege any materially false statement or omission by Sexton or Murphy, requiring dismissal of the § 10(b) "material misstatement" claim against them. (See Mov. Br. at 20-22.) Unable to respond, and despite boilerplate language in the VR Complaint to the contrary (see VR Compl. ¶ 268), the Opposition Brief instead states that the VR Plaintiffs' claims against the "Officer Defendants," including Sexton and Murphy, are based *solely* upon Rules 10b-5(a) and (c). (See Opp. Br. at 18, 78.) The VR Plaintiffs have thus abandoned any claims against Sexton and Murphy under Rule 10b-5(b), *i.e.*, for misstatements or omissions.[2] See In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., No. 06 Civ. 643, 2007 WL 2694469, at *6 (S.D.N.Y. Sept. 13, 2007) (hereinafter "In re RCM Brokerage Customer Sec. Litig.").

The Moving Brief also demonstrated that both Complaints fail to allege that Sexton or Murphy engaged in any conduct that could support Plaintiffs' claims pursuant to Rules 10b-5(a) and (c). As set forth below, Plaintiffs' arguments in their Opposition Brief simply highlight their

---

[1] Terms defined in the moving brief in support of Murphy and Sexton's motion to dismiss ("Mov. Br.") are assigned the same meaning herein.

[2] The CM Complaint does not contain a Rule 10b-5(b) claim against any defendant.

failure to plead a securities fraud claim as against Sexton or Murphy. Specifically, Plaintiffs' "scheme" claims (1) fail to allege with particularity any participation by Sexton or Murphy in the RCM Securities Scheme and (2) fail to allege that Sexton or Murphy committed a deceptive act.

1. Plaintiffs Fail To Allege with Particularity Any Participation by Sexton or Murphy in the RCM Securities Scheme

While giving lip service to the requirements of Rule 9(b), Plaintiffs fail to point to any specific act by Sexton or Murphy in furtherance of the RCM Securities Scheme. Rather, the Opposition Brief refers only to conclusory, non-specific allegations that the "Officer Defendants 'direct[ed] Refco employees to sell, or cause to be sold . . . securities owned by Plaintiffs and other RCM customers that had been entrusted to RCM'" and then "directed the [transfer] of the proceeds of these sales to other Refco entities." (Opp. Br. at 78 (quoting paragraphs in the VR and CM Complaints); see also Opp. Br. at 69 (paraphrasing same allegations).[3])

As set forth in the Moving Brief, such "broad-brush," non-particularized allegations have repeatedly been found inadequate to satisfy Rule 9(b). (Mov. Br. at 13, 15-16.) See 380544 Canada, Inc. v. Aspen Technology, Inc., No. 07 Civ. 1204, 2008 WL 731971, at *16 (S.D.N.Y. Mar. 18, 2008) (allegations that "Defendants misrepresented Aspen's finances" during meetings did not adequately attribute statements to individual defendants, as "[i]ndiscriminate defendant 'clumping' does not adhere to the particularity standards of 9(b) and the PSLRA"); Three Crown Ltd. P'ship v. Caxton Corp., 817 F. Supp. 1033 (S.D.N.Y. 1993) ("vague allegations regarding 'some or all defendants'" inadequate absent particularized facts showing how each defendant was involved in alleged fraud). Tellingly, the Opposition Brief fails even to discuss, let alone to

---

[3] In a misleading attempt to give the impression that the Complaints contain individualized allegations, Plaintiffs cite to allegations pleaded generically against the "Officer Defendants" or "senior management" as if they were pleaded specifically against Sexton and Murphy. (Opp. Br. at 69-71.)

2

distinguish, the §10(b) cases cited in the Moving Brief that show Plaintiffs' allegations fail to satisfy Rule 9(b). See Gurfein v. Ameritrade, Inc., 411 F.Supp. 2d 416 (S.D.N.Y. 2006); Rich v. Maidstone Financial, Inc., No. 98 Civ. 2569, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002); In re Blech Sec. Litig., 961 F. Supp. 569 (S.D.N.Y. 1997).

None of the cases cited by Plaintiffs (see Opp. Br. at 79-80) supports their § 10(b) scheme claim against Sexton and Murphy. The courts in In re Vivendi Universal, S.A. Securities Litigation, 381 F. Supp. 2d 158, 191-92 (S.D.N.Y. 2003), and In re Retek Inc. Securities Litigation, No. 02-4209, 2007 WL 14352, at *6 (D. Minn. Jan. 3, 2007), applied the group pleading doctrine to attribute allegedly false press releases and other "group-published" documents to certain defendants. Here, there are no group-published documents; indeed, as described above, Plaintiffs have abandoned any misstatements claim against the Officer Defendants.[4] The decision in Ross v. Bolton, 904 F.2d 819 (2d Cir. 1990), not only addressed aider and abettor liability pre-Central Bank, but actually affirmed the dismissal of a complaint against a clearing agent arising from a broker's illegal scheme.

In short, Plaintiffs' conclusory allegations that Sexton and Murphy, as "Officer Defendants," directed the sale of Plaintiffs' securities and directed the proceeds of these sales to other Refco entities – unsupported by any factual detail – lack the particularity required by Rule 9(b).

---

[4] The Court in In re Retek also relied on allegations that certain of the officers were "at the center of the scheme to defraud" and engaged in "substantial insider trading," which "qualifies as a deceptive device under [§] 10(b)." Id. at *7. No such allegations have been made against Sexton or Murphy.

3

2.  Plaintiffs Fail To Allege That Sexton or Murphy
    Committed a Manipulative or Deceptive Act

As set forth in the Moving Brief, the § 10(b) claims against Sexton and Murphy also fail because the Complaints do not allege that they committed a *deceptive* act. (See Mov. Br. at 16-20.) Plaintiffs, relying almost entirely on SEC v. First Jersey Securities Inc., 101 F.3d 1450, 1471 (2d Cir. 1996), argue that in "scheme" cases, "[§] 10(b) liability attaches to persons 'who had knowledge of the fraud and assisted in its perpetration.'" (Opp. Br. at 77.) The quoted First Jersey language was borrowed from the Second Circuit's earlier opinion in Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994) – decided prior to the Supreme Court's decision in Central Bank eliminating aiding and abetting liability under § 10(b). Later Second Circuit decisions make clear that, to the extent the First Jersey language remains viable, it is limited to the facts there present, involving claims against an alleged "mastermind" of a fraud who directs subordinates to make false and misleading statements. See Wright v. Ernst & Young LLP, 152 F.3d 169, 176 (2d Cir. 1998); Shapiro v. Cantor, 123 F.3d 717, 720-21 (2d Cir. 1997); see also Ravens v. Republic New York Corp., No. CIV.A.99-4981, 2002 WL 1969651, at *11 n.12 (E.D.Pa. 2002) (stating that the holding in First Jersey has been "effectively overruled" by the decisions in Wright and Shapiro).[5] Here, there are no allegations that Sexton or Murphy directed anyone to make any false or misleading statements to Plaintiffs.

Plaintiffs' reliance upon a "knowledge and assistance" standard not only ignores Central Bank and the Second Circuit's post-First Jersey decisions, but also disregards prior holdings of this Court. See In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469, at *8 (absent a

---

[5] In re Blech Sec. Litig., No. 94 Civ. 7696 (RWS), 2002 WL 31356498 (S.D.N.Y. Oct. 17, 2002), also cited by Plaintiffs, is inapposite. That case involved allegations that Bear Stearns knowingly engaged in a market manipulation scheme, which has long been recognized as deceptive conduct.

4

fiduciary duty, "there must be some conduct or representation by the fraudster that deceives the victim")[6]; In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004) (same). See also In re Alstom SA Sec. Litig., 406 F. Supp. 2d 433, 476-77 (S.D.N.Y. 2005) (scheme claim must allege that defendant took action that was itself deceptive or manipulative).

Plaintiffs' unavailing attempt to distinguish the recent Supreme Court decision in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008), further highlights the absence of either allegations of a deceptive act by Sexton or Murphy, or reliance by Plaintiffs on any conduct by them. Plaintiffs argue that the "issue in Stoneridge was whether, in a classic [§] 10(b) action involving misrepresentations, the investor plaintiffs can use a scheme liability theory to impose liability on defendants who are not alleged to have made misrepresentations." (Opp. Br. at 77.) However, just as in Stoneridge, Plaintiffs seek to impose scheme liability on defendants who are not themselves alleged to have made the "representations" – i.e., the Customer Agreement, account statements and trade confirmations, as well as statements by RCM employees – notwithstanding the fact that the representations constitute the acts by which Plaintiffs were allegedly deceived. (See Mov. Br. at 18-20.)

Decisions rendered since the submission of the Moving Brief, and applying Stoneridge, confirm that Plaintiffs have failed to adequately plead a "scheme" claim. In Pugh v. Tribune Co., 521 F.3d 686 (7th Cir. 2008), the court affirmed dismissal of a §10(b) scheme claim brought by shareholders of a publishing company against a company officer. Despite specific allegations that the officer "participated" in the fraudulent scheme – indeed, he had pled guilty to "directing employees to falsely inflate paid circulation data" – the court rejected plaintiffs' scheme liability

---

[6] As set forth in our Moving Brief (p. 17, n. 11), Plaintiffs do not, and cannot, allege that Sexton or Murphy owed them a fiduciary duty.

5

theory, as there was no allegation that the investors were informed of or relied upon the officer's false certifications. Similarly, in Katz v. Image Innovations Holdings, Inc., 06 Civ. 3707, 2008 WL 762105 (S.D.N.Y. Mar. 24, 2008), Judge Koeltl dismissed §10(b) claims brought against certain officers. Although the complaint "suggest[ed] that these defendants 'are liable as participants in a fraudulent scheme' to defraud purchasers of Image stock," the complaint did "not explain how the alleged actions of these defendants were relied upon by purchasers of Image stock during the relevant period." Id. at *2. Applying Stoneridge, the court held that "'an allegation of "scheme liability" . . . does not answer the objection that the petitioner did not in fact rely upon [the defendants'] own deceptive conduct.'" Id.

These decisions make clear that Plaintiffs not only have failed to allege a deceptive act by Sexton or Murphy, as required to state a claim under § 10(b), but also have failed to allege reliance on any conduct by them, as required under Stoneridge. Indeed, Plaintiffs specifically allege that they were unaware of the transactions allegedly directed by the Officer Defendants, (see, e.g., VR Compl. ¶ 118; Opp. Br. at p. 78), and thus could not have relied upon their actions.

**B.    Plaintiffs' Allegations Do Not Create a Strong Inference
       That Murphy or Sexton Acted with Scienter**

As set forth in the Moving Brief, Plaintiffs also do not plead any facts demonstrating that Murphy or Sexton (i) knew or were reckless in not knowing that Plaintiffs allegedly had been deceived about the use of their assets or (ii) possessed a personal motive and had sufficient opportunity to commit the alleged RCM Securities Scheme. The Opposition Brief fails to address these fundamental defects in the Complaints' scienter allegations.

Contrary to Plaintiffs' suggestion that scienter is "rarely" resolvable on a motion to dismiss (Opp. Br. at 50-51), these pleading defects require that Murphy and Sexton be dismissed

6

from the case. The purpose of the PSLRA was to require courts "'to render judgment at the pleadings stage of a case'" where allegations do not raise a strong inference of fraudulent intent. In re Salomon Analyst Winstar Litig., 02 Civ. 6171, 2006 WL 510526, at *7 n.11 (S.D.N.Y. Feb. 28, 2006) (Lynch, J.) (citation omitted). As the Supreme Court recently ruled, dismissal is obligatory unless pleadings create an inference of intentional wrongdoing that is "at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504-05 (2007).

Here, Plaintiffs' conclusory allegations that all "Officer Defendants" "direct[ed]" the sale of Plaintiffs' securities held at RCM (Opp. Br. at 14-15, 69) are shotgun pleadings that violate the PSLRA and are not entitled to weight. See 380544 Canada, Inc., 2008 WL 731971, at *23, *26; Liberty Mut. Ins. Co. v. WAWA Tours, Inc., No. CV-07-0880, 2007 WL 2743500, at *7 (E.D.N.Y. Sept. 18, 2007); Kinsey v. Cendant Corp., No. 04 Civ. 0582, 2004 WL 2591946, at *13 n.5 (S.D.N.Y. Nov. 16, 2004). As this Court noted when rejecting similar allegations in the security holders action, Plaintiffs have not pled any facts tying parent company officers Murphy (Refco's executive vice president for global marketing) and Sexton (Refco's chief operating officer commencing in August 2004) to the operations of the RCM subsidiary. See In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 650 (S.D.N.Y. 2007).

Moreover, even if Plaintiffs' unsupported assertion that defendants were involved in the sale of their securities could be credited, that is no basis for implying that Murphy or Sexton knew that Plaintiffs had been defrauded. See In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("the Complaint is devoid of facts establishing that Weill knew such transactions to be fraudulent"). Plaintiffs do not attempt to explain how Murphy and Sexton's "high-level" positions at the parent company (Opp. Br. at 73) allegedly put them on notice that

7

customers of one of the subsidiaries had been misled as to the use of their securities. Plaintiffs' naked assertion of knowledge – contained only in their brief, not their complaints[7] – "is a conclusion, not a factual allegation, and 'scienter cannot be inferred solely from . . . the defendants' . . . executive managerial position[.]'" American Fin. Int'l Group - Asia, LLC v. Bennett, No. 05 CV 8988, 2007 WL 1732427, at *8 (S.D.N.Y. June 14, 2007) (Lynch, J.) (internal citation omitted). See also In re Citigroup, 330 F. Supp. 2d at 382.

Nor do the "magnitude, scope and materiality" of the alleged RCM Securities Scheme (Opp. Br. at 74) create an inference of scienter. As Plaintiffs' own cited case, In re Livent, Inc. Securities Litigation, 148 F. Supp. 2d 331 (S.D.N.Y. 2001), explains, while the magnitude of an alleged fraud may provide background to a scienter inquiry, "magnitude . . . , by itself, is insufficient to meet" the standards of the PSLRA. Id. at 372. See also In re Refco Sec. Litig., 503 F. Supp. 2d at 648. Plaintiffs do not even try to quantify the alleged fraud; they simply assert that the proceeds of the sale of RCM customer securities were used to make intercompany loans. However, Plaintiffs fail to adequately allege that Murphy or Sexton knew that customer securities were used to fund intercompany loans much less that such loans were improper. There is nothing inherently wrongful with intercompany loans, and Plaintiffs have pled no facts suggesting that Murphy and Sexton would have any reason to doubt that such loans served a legitimate business purpose. (See Mov. Br. at 29-31.)

Reading the complaint as a whole, the most plausible inference is that Murphy and Sexton – even if alleged to have been aware that RCM customer assets were used to fund

---

[7] None of the complaint paragraphs cited in the Opposition Brief support Plaintiffs' conclusory assertion in their brief that all "Officer Defendants" were "[a]ware of RCM's obligations to hold Plaintiffs' and other customers' securities in safekeeping." (Opp. Br. at 69.)

8

intercompany loans – would have believed that practice to be reasonable and permissible, particularly since RCM was held out as an unregulated entity not subject to segregation and net capital requirements. See In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469, at *9 (finding similar allegations insufficient to demonstrate deception where RCM held itself out as unregulated and not subject to segregation and net capital requirements).

Plaintiffs' allegations that the Officer Defendants supposedly withheld unrelated information from TH Lee in connection with the Refco LBO (Opp. Br. at 73-74) and were included, in an apparent attempt to invoke a hearsay exception under Fed. R. Evid. 801(d)(2)(E), on a list of unindicted alleged co-conspirators (id. at 70-71), have nothing to do with the alleged RCM Securities Scheme and fail to demonstrate that Murphy or Sexton knew that Plaintiffs had been misled about the use of their securities. See Podany v. Robertson Stephens, Inc., 318 F. Supp.2d 146, 158 (S.D.N.Y. 2004) (Lynch, J.) ("alleging fraud in a different transaction does not undercut plaintiffs' obligation to allege provable facts giving rise to an inference of scienter in the transaction at hand"); In re Salomon Analyst Winstar Litig., 2006 WL 510526 at *8 (allegations in separate NASD complaint not "strong circumstantial evidence" of scienter).

Finally, for the reasons set forth in the Moving Brief (pp. 23-27), Plaintiffs' allegations that Murphy and Sexton participated in a profit-sharing program, received stock grants and received a greenshoe dividend in connection with Refco's IPO (Opp. Br. at 74-75) do not establish that they had the motive or opportunity to deceive RCM customers about the use of their assets. It is well-established that participation in a profit-sharing plan does not suggest scienter, see, e.g., Acito, Inc. v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995), while Plaintiffs' conjectural attempt to tie consummation of the IPO and the resulting greenshoe payment to the alleged RCM Securities Scheme – allegedly initiated long before either Murphy

9

or Sexton became a Refco employee – is far too attenuated to create a strong inference of fraudulent intent. (See Mov. Br. 25.[8])

Because Plaintiffs' scienter allegations against Murphy and Sexton do not give rise to a cogent inference of fraudulent intent "at least as strong" as any nonculpable inference, Plaintiffs' claims do not satisfy the PSLRA and should be dismissed. Tellabs, 127 S. Ct. at 2504-05.

## POINT II

## PLAINTIFFS HAVE NOT PLED A RULE 10B-16 CLAIM AGAINST MURPHY OR SEXTON

For the reasons set forth at Point IV of Defendant Philip Silverman's Memorandum of Law and Reply Memorandum of Law in Support of His Motion to Dismiss, which we incorporate herein, Plaintiffs' Rule 10b-16 claims as against Murphy and Sexton fail.

## POINT III

## PLAINTIFFS HAVE NOT PLED A § 20(A) CONTROL PERSON CLAIM AGAINST MURPHY OR SEXTON

### A. Plaintiffs Have Pled No Facts Demonstrating Actual Control

Plaintiffs have no rejoinder to Murphy and Sexton's argument that the Complaints contain no facts rendering plausible the claim that they possessed actual control over the transactions and representations at issue. That failure compels dismissal of Plaintiffs' § 20(a) claim as a matter of law. See In re Global Crossing Ltd. Sec. Litig., 2005 WL 1907005, at *12; Wallace v. Buttar, 239 F. Supp. 2d 388, 396 (S.D.N.Y. 2003) (rejecting § 20(a) liability against

---

[8] The Court's conclusion in In re Refco, Inc. Securities Litigation that scienter was adequately pled does not apply here. The plaintiffs in that action explained why the Refco IPO, and the resulting greenshoe dividend, would not have occurred if the RGHI Receivable had been disclosed in the SEC filings leading to the IPO. See 503 F. Supp. 2d at 646 (greenshoe payment "is a concrete benefit flowing directly from the alleged fraud."). In contrast, Plaintiffs here do not explain how the greenshoe divided or any other concrete benefit to Murphy or Sexton resulted directly from the RCM Securities Scheme.

company president absent a showing that he possessed control over transaction in question), rev'd on other grounds, 378 F.3d 182 (2d Cir. 2004); Rubinstein v. Skyteller, Inc., 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) (failure to plead facts suggesting control over stock misappropriation compelled dismissal of claim against treasurer); Robbins v. Hometown Buffet, Inc., No. 94-1655, 1995 WL 908194, at *9 (S.D. Cal. Mar. 16, 1995) (dismissing claim for failure to "provide specific allegations of acts indicating control").

Plaintiffs advance the legally untenable assertion that "naked" control allegations typically will suffice to state a claim under Rule 8(a). (Opp. Br. at 86.) That proposition has been refuted by Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). There, the Supreme Court ruled that even under Rule 8(a), a complaint must contain "enough *facts* to state a claim to relief that is plausible on its face." Id. at 1974 (emphasis added). Plaintiffs' reference without citation to "Bell Atl. Corp. v. Twombly" for a purported lesser standard (Opp. Br. at 93) is extremely misleading in that, rather than citing the controlling Supreme Court decision, Plaintiffs are relying on the very portion of the earlier Second Circuit decision that was *reversed* by the Supreme Court.

Measured against the correct Twombly standard – requiring factual amplification of a claim to render it plausible – the Complaints fall short. Plaintiffs have not pled any facts demonstrating that Murphy or Sexton exercised actual control over RCM, the alleged sale of RCM customer securities or the alleged representations regarding RCM customer accounts. Nor have Plaintiffs suggested any reason why parent company executives Murphy and Sexton would have had any role whatsoever in the management of Plaintiffs' accounts at RCM. Neither their status as parent company executives, nor their signing of an SEC filing or being subject to non-competition agreements (Opp. Br. at 91-93), implies control over the daily activities of RCM.

11

See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., No. 05 Civ. 1898, 2005 WL 2148919, at *15 (S.D.N.Y. Sept. 6, 2005). For these reasons, and as fully explained in the Moving Brief (pp. 32-35), Plaintiffs' control allegations are insufficient to state a claim.

### B. Plaintiffs Have Pled No Facts Demonstrating Culpable Participation

Although the Second Circuit has repeatedly held that culpable participation is an element of a prima facie § 20(a) claim, see ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007); Ganino v. Citizens Utils. Co., 228 F.3d 154, 156 (2d Cir. 2000); Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998), Plaintiffs argue that it should not be. (Opp. Br. at 87-88.) This Court rejected arguments identical to Plaintiffs' in Burstyn v. Worldwide Xceed Group, Inc., 01 Civ. 1125, 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002) (Lynch, J.). There, the Court not only found that culpable participation must be pleaded to establish a prima facie case, but also that such pleading must meet the heightened standards of the PSLRA. See id. at *7-*8. Indeed, in another Refco case, this Court rejected a § 20(a) claim for failing properly to allege culpable participation. See In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d at 662-63.

The Court should dismiss the § 20(a) claims against Murphy and Sexton because Plaintiffs have pled no facts showing that they participated in the transactions and representations at issue (see Point I.A, above) or that they did so with culpability (see Point I.B, above).

### POINT IV

### PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD SHOULD BE DENIED AS TO SEXTON AND MURPHY

Plaintiffs' request to replead in the event any of their claims is found to be deficient (Opp. Br. at 123) should be denied as to Sexton and Murphy because Plaintiffs are seeking a third "bite at the apple," and because any further amendment would be futile.

Plaintiffs rely on the fact that leave to amend has not previously been sought in the VR and CM Actions. (Id. at 124). This argument ignores, however, the history and interrelatedness of the RCM customers class action (the "RCM Action") and the VR and CM Actions. Plaintiffs in the RCM Action filed an Amended Class Action Complaint which alleged §§ 10(b) and 20(a) claims against Sexton and Murphy, among others, based upon their purported participation in the same alleged scheme that underlies the VR and CM Actions. See In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469. This Court dismissed the RCM Action because plaintiffs failed to allege the requisite deceptive conduct as against any defendant. See id. at *8-*12. The plainly deficient claims against Sexton and Murphy were dismissed without leave to replead because the plaintiffs did not even try to defend the adequacy of them. See id. at *6, *13.

Following this Court's dismissal of the RCM Action, and having the benefit of this Court's ruling therein, the VR and CM Plaintiffs asserted virtually identical, non-particularized, patently insufficient claims against Murphy and Sexton.[9] Under these circumstances, the VR and CM Complaints should be treated as amendments to the Amended Class Action Complaint in the RCM Action.[10] Having been unable to cure the deficiencies in that complaint as to Sexton and Murphy, the VR and CM Plaintiffs should not now get a third "bite at the apple." See Denny v. Barber, 576 F.2d 465, 471 (2d Cir. 1978) (affirming dismissal of securities fraud action for lack of particularity and denial of request for second amendment); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 115 (2d Cir. 1982) (same; "no abuse of discretion in the district court's refusal to

---

[9] As this Court noted in its dismissal of the RCM Action, the VR and CM Plaintiffs also had the ability to review the opinions in the In re Refco Securities Litigation and American Financial actions.

[10] The interrelatedness of the RCM, VR and CM Actions is further evidenced by the fact that counsel for the VR and CM Plaintiffs is also co-lead counsel to the lead plaintiffs and putative class in the RCM Action, and has submitted one brief opposing the motions to dismiss in all three actions.

13

give plaintiff's attorneys a third attempt to restate the defective allegations"); Rivera v. Salomon Smith Barney Inc., No. 01 Civ. 9282, 2003 WL 222249, at *2 (S.D.N.Y. Jan. 30, 2003) (denying motion for leave to file a second amended complaint).

The circumstances here present even more compelling grounds for denying Plaintiffs yet another try. In addition to the guidance provided to the VR and CM Plaintiffs by this Court's decisions in the RCM Action and the other Refco-related actions, their counsel – which previously represented the Refco Creditors Committee and presently represents Marc Kirschner as Trustee of the Refco Litigation Trust – has long had access to all of Refco's records, including employees' e-mails, and to Refco's employees. See VR Compl. ¶ 1; CM Compl. ¶ 1 (listing the categories of information that were available to Plaintiffs' counsel). In view of such access, the VR and CM Plaintiffs had more than an adequate opportunity to discover any evidence to support particularized allegations that would sufficiently state claims against Murphy and Sexton. Their failure to do so under these circumstances warrants denial of Plaintiffs' request for leave to replead. See Mooney v. Vitolo, 435 F.2d 838, 839 (2d Cir. 1970) (leave to replead negligence and fraud claims against a corporation's management denied where plaintiffs "have had extensive access to the records and files" of that corporation).

The above facts also demonstrate that leave to replead as against Sexton and Murphy should be denied on the ground of futility. See Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to replead may be denied when further amendment would be "futile"); In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469 at *12 (same). In view of the Plaintiffs' inability to take advantage of their extensive access to Refco documents and employees, or of the decisions in the RCM Action and other Refco-related actions, so as to state a claim against Sexton or Murphy, there is no reason to believe that yet another attempt would lead to a different result.

Plaintiffs should thus be denied leave to replead. See Treppel v. Biovail Corp., No. 03 Civ. 3002, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) ("leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless").

Plaintiffs have also failed to provide a proposed amended pleading or to otherwise specify how they would cure the glaring deficiencies as to Sexton and Murphy, thereby further evidencing futility and making denial of their request to replead appropriate. See Bankruptcy Trust of Gerard Sillam v. Refco Group, LLC, No. 05 Civ. 10072, 2006 WL 2129786, at *4-7 (S.D.N.Y. July 28, 2006) (denying plaintiffs' request to replead where the request was made "informally in response to defendants' motions to dismiss" and plaintiffs failed to show how they would cure the deficiencies in their complaint).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in their Moving Brief, defendants Murphy and Sexton respectfully request that the Court dismiss the claims asserted against them in the VR and CM Complaints in their entirety with prejudice.

Dated:   June 9, 2008
         New York, New York

| | |
|---|---|
| FRIEDMAN & WITTENSTEIN<br>A Professional Corporation | SHAPIRO FORMAN ALLEN & SAVA LLP |
| By: __/s/  Ivan O. Kline__<br>   Stuart I. Friedman (SF 9186)<br>   Ivan O. Kline (IK 9591) | By: __/s/  Matthew J. Sava__<br>   Matthew J. Sava (MS 9231)<br>   Yoram J. Miller (YM 4207)<br>   Jason Vigna (JV 8965) |
| 600 Lexington Avenue<br>New York, NY 101022<br>(212) 750-8700 | 380 Madison Avenue<br>New York, NY 10017<br>(212) 972-4900 |
| *Attorneys for Defendant William M. Sexton* | *Attorneys for Defendant Joseph J. Murphy* |