UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VR GLOBAL PARTNERS, L.P. PATON HOLDINGS :
LTD., VR CAPITAL GROUP LTD., AND VR  :   No. 07 CIV 8686 (GEL)
ARGENTINA RECOVERY FUND, LTD.,       :
                                     :
                    Plaintiffs,      :   ELECTRONICALLY FILED
                                     :
        - against -                  :
                                     :
PHILIP R. BENNETT, ET AL.,           :
                                     :
                    Defendants.      :
-----------------------------------------------------------------X
                                     :
CAPITAL MANAGEMENT SELECT FUND LTD., :
INVESTMENT & DEVELOPMENT FINANCE     :   No. 07 Civ. 8688 (GEL)
CORPORATION, IDC FINANCIAL S.A.,     :
                                     :
                    Plaintiffs,      :
                                     :
        - against –                  :
                                     :
PHILIP R. BENNETT, ET AL.,           :
                                     :
                    Defendants.      :
-----------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PHILIP SILVERMAN'S MOTIONS TO DISMISS THE COMPLAINTS

HELLER EHRMAN LLP
Lawrence J. Zweifach (LZ-8641)
lawrence.zweifach@hellerehrman.com
Richard Cashman (RC-4769)
richard.cashman@hellerehrman.com
Eric Creizman (EC-7684)
eric.creizman@hellerehrman.com
Times Square Tower
7 Times Square
New York, New York  10036-6524
Telephone:  (212) 832-8300
Facsimile:   (212) 763-7600

*Attorneys for Defendant Philip Silverman*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................1

ARGUMENT..........................................................................................................................2

I.    Plaintiffs Still Have Not Pointed To Any Alleged Facts From Which It Can Be Inferred That Mr. Silverman Was An Active Participant In The Claimed RCM Securities Scheme .........................................................................................2

II.    Plaintiffs Also Have Not Pled Scienter as to Mr. Silverman ..............................6

    A.    Plaintiffs Have Not Pled Any Allegations Concerning Mr. Silverman's Motive....6

    B.    Plaintiffs Also Fail to Allege Facts Sufficient to Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness .....................7

III.    Plaintiffs' Controlling Person Claim As To Mr. Silverman Also Fails..............10

IV.    Plaintiffs' Rule 10b-16 Claims Should Be Dismissed .........................................12

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

Page

**Cases**

*A.I.A. Holdings, S.A. v. Lehman Bros. Inc.*,
  No. 97 Civ. 4978 (LMM), 1999 WL 47223 (S.D.N.Y. July 26, 1999) ............................... 4

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ................................................................................................ 12, 13, 14

*Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*,
  No. 05 Civ. 8988 (GEL), 2007 WL 1732427 (S.D.N.Y. June 14, 2007) .......................... 4

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir. 1994) ................................................................................................ 5

*Bates v. Long Island R.R.*,
  997 F.2d 1028 (2d Cir. 1993) ........................................................................................... 8

*Bellikoff v. Eaton Vance Corp.*,
  481 F.3d 110 (2d Cir. 2007) ...................................................................................... 12, 13

*Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237 (S.D.N.Y. 1996) ............................................... 14

*Brown v. Bullock*,
  194 F. Supp. 207 (S.D.N.Y. 1961), *aff'd* 294 F.2d 415 (2d Cir. 1961) ............................ 13

*Burnett v. Rowzee*,
  No. SA CV 07-641 DOC (ANx), 2007 WL 4754539 (C.D. Cal. Oct. 18, 2007) ............... 3

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) .......................................................................................................... 6

*Chemical Bank v. Shearson Lehman Bros., Inc.*,
  91 Civ. 4915, 1992 WL 183760 (S.D.N.Y. July 21, 1992) ....................................... 12, 14

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) .............................................................................................. 9

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
  848 F.2d 24 (2d Cir. 1988) ........................................................................................... 9, 10

*Greenblatt v. Drexel Burnham Lambert, Inc.*,
  763 F.2d 1352 (11th Cir. 1985) ...................................................................................... 12

*Hart v. Internet Wire, Inc.*,
  145 F. Supp. 2d 360 (S.D.N.Y. 2001) ............................................................................... 7

*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007) ............................................................................................... 10

*In re Global Crossing, Ltd. Sec. Litig.*,
   322 F. Supp. 2d 319 (S.D.N.Y. 2004) .................................................................................... 3

*In re Global Crossing, Ltd. Sec. Litig.*,
   No. 02 Civ. 910 (GEL), 2005 WL 1907005 (Aug. 8, 2005) ........................................ 10, 11

*In re Marsh & McLennan Cos.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................................................ 10

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d 472 (S.D.N.Y. 2005) .................................................................................. 5

*In re Parmalat Secs. Litig.*,
   383 F. Supp. 2d 616 (S.D.N.Y. 2005) .................................................................................. 2

*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*,
   No. 06 Civ. 643 (GEL), 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) .................... 2, 4, 6

*In re Salomon Analyst AT&T Litig.*,
   350 F. Supp. 2d 455 (S.D.N.Y. 2004) .................................................................................. 5

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
   32 F.3d 697 (2d Cir. 1994) ................................................................................................... 15

*Jerozal v. Cash Reserve Mgmt., Inc.*,
   1982 WL 1363 (S.D.N.Y. 1982) .......................................................................................... 13

*Katz v. Image Innovations Holdings, Inc.*,
   No. 06 Civ. 3707 (JGK), 2008 WL 762105 (S.D.N.Y. Mar. 24, 2008) ............................ 5

*Komanoff v. Mabon, Nugent & Co.*,
   884 F. Supp. 848 (S.D.N.Y. 1995) ...................................................................................... 14

*LC Capital Partners, LP v. Frontier Ins. Group, Inc.*,
   318 F.3d 148 (2d Cir. 2003) .................................................................................................. 15

*Liang v. Dean Witter & Co.*,
   540 F.2d 1107 (D.C. Cir. 1976) ........................................................................................... 14

*Metzner v. D.H. Blair & Co.*,
   689 F. Supp. 262 (S.D.N.Y. 1988) ....................................................................................... 14

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ................................................................................................................ 8

*Olmsted v. Pruco Life Ins. Co.*,
   283 F.3d 429 (2d Cir. 2002) ..................................................................................... 12, 13, 14

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ................................................................................................ 5

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ................................................................................................. 7

*S.E.C. v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ............................................................................................... 5

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    128 S. Ct. 761 (2008) ............................................................................................... 3, 5, 13

*Strougo v. Scudder*,
    964 F. Supp. 783 (S.D.N.Y. 1997) ..................................................................................... 13

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    No. 05-CV-1898 (SAS), 2005 WL 2148919 (S.D.N.Y. Sept. 6 2005) .............................. 11

*Volmar Distribs., Inc. v. New York Post Co.*,
    899 F. Supp. 1187 (S.D.N.Y. 1994) .................................................................................... 9

*Zerman v. Ball*,
    735 F.2d 15 (2d Cir. 1984) ................................................................................................ 12

**Statutes, Rules and Regulations**

Investment Company Act of 1940, 15 U.S.C. §§ 80a-34(b), -36(a), -48(a) ................................ 13

Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2008) ................................................. 3, 13

Truth in Lending Act, 15 U.S.C. § 1601-1667f (2008) ............................................................... 14

S.E.C. Rule 10b-5, 17 C.F.R. § 240.10b-5 (2008) ................................................................. 4, 13

S.E.C. Rule 10b-16, 17 C.F.R. § 240.10b-16 (2008) ........................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 3

Fed. R. Evid. 801(d)(2)(E) .......................................................................................................... 10

**Other Authorities**

H. Norman Knickle, *The Investment Company Act of 1940: SEC Enforcement and Private Actions*,
    23 Ann. Rev. Banking & Fin. L. 777 (2004) ..................................................................... 13

Defendant Philip Silverman submits this reply memorandum in further support of his motions to dismiss all counts of the complaints in *VR Global Partners, L.P. v. Bennett et al.* (the "VR Compl.") and *Capital Management Select Fund Ltd. v. Bennett et al.* (the "CM Compl.") (together "the Complaints") as against him.

## INTRODUCTION

Mr. Silverman's motions demonstrate that the Complaints should be dismissed because:

- The Complaints rely entirely on sweeping, conclusory, and undifferentiated allegations concerning "Defendants" and "Officer Defendants" that do not specify any wrongful conduct by Mr. Silverman himself, and do not connect him to the alleged scheme or identify a single deceptive act he personally committed. Silverman Mem. at 6-11;[1]

- The Complaints themselves make clear that Mr. Silverman was not paid any of the cash or stock which supposedly motivated other defendants; they also do not identify any other specific factor motivating him, and, thus, fail to allege scienter. *Id.* at 13-15;

- The Complaints do not allege any facts from which it can be inferred that Mr. Silverman knew or should have known that the RCM transactions were fraudulent, and, thus, also fail to allege conscious misbehavior or recklessness. *Id.* at 19-21;

- The Complaints fail to allege any facts demonstrating how Mr. Silverman, who is not alleged to have been an officer of RCM, nevertheless controlled RCM's affairs or the transactions at issue; in fact, the conclusory allegations as to Mr. Silverman are belied by specific allegations that others actually controlled RCM and Refco. *Id.* at 26-30;

- SEC Rule 10b-16 does not provide a private right of action, and it does not apply to Mr. Silverman in any event. *Id.* at 17-26.

Plaintiffs' opposition does not save their Complaints as to Mr. Silverman. Indeed, Plaintiffs barely address Mr. Silverman at all, mentioning him on just nine pages of their 125-page opposition, just as they mentioned him in only five paragraphs of the 373-paragraph CM Complaint and in only six paragraphs of the 561-paragraph VR Complaint. When Plaintiffs do address Mr. Silverman, they either continue to hide behind their "Officer Defendants" device,

---

[1] "Silverman Mem." refers to Mr. Silverman's opening memorandum of law. "Pltfs. Mem." refers to Plaintiffs' memorandum in opposition. Mr. Silverman continues to join in those arguments for dismissal applicable to him made by the other defendants.

or conveniently ignore the arguments for which they have no answer. For example:

- Plaintiffs are unable to cite a single allegation from which it may be inferred that Mr. Silverman ever dealt with the Plaintiffs or any other RCM customer, owed Plaintiffs any fiduciary duty, or engaged in any deceptive conduct on which Plaintiffs relied;

- Rather than identify even a single allegation in their Complaints that alleges motive as to Mr. Silverman, Plaintiffs instead continue to lump him with other "Officer Defendants," who, unlike Mr. Silverman, are specifically alleged to have had reason to join the alleged scheme so as to cash out their interests in Refco;

- Recognizing that the Complaints fail to adequately allege conscious misbehavior or recklessness, Plaintiffs resort to embellishing the actual allegations in their pleadings;

- Plaintiffs fail to address the fact that the SEC filings upon which they rely to allege controlling person liability as to the "Officer Defendants" never identify Mr. Silverman;

- Plaintiffs fail to address the specific authority demonstrating that they have no claims against Mr. Silverman under Rule 10b-16.

This action should be dismissed against Mr. Silverman in its entirety, with prejudice.[2]

## ARGUMENT

I. **Plaintiffs Still Have Not Pointed To Any Alleged Facts From Which It Can Be Inferred That Mr. Silverman Was An Active Participant In The Claimed RCM Securities Scheme**

Plaintiffs concede that their claim against Mr. Silverman is based entirely on a scheme liability theory. *See* Pltfs. Mem. at 76-78. This means that Plaintiffs were required to allege facts identifying the deceptive acts in support of the scheme Mr. Silverman personally is supposed to have performed, when he performed them, and the effect his acts had on the investors in the securities at issue. *See, e.g., In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643 (GEL), 2007 WL 2694469, at *7 (S.D.N.Y. Sept. 13, 2007) ["*RCM-I*"], citing *In re Parmalat Secs. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005). Especially

---

[2] Plaintiffs already have had ample opportunity to assert a claim against Mr. Silverman, and it is now plain they cannot allege one. Thus, all of the reasons for a dismissal with prejudice set out in Point IV of the reply brief of defendants Sexton and Murphy apply equally to Mr. Silverman and are incorporated herein by reference.

2

where there are multiple defendants, as here, Plaintiffs must allege as to each defendant "at least one 'deceptive act' with enough particularity so that [defendant] may adequately defend himself--i.e the Court would like to know exactly what Plaintiffs claim that [defendant] did, when he did it, and who he did it to." *Burnett v. Rowzee*, No. SA CV 07-641 DOC (ANx), 2007 WL 4754539, at *5 (C.D. Cal. Oct. 18, 2007). Yet, Plaintiffs have not pointed in their opposition to any allegations from which it may be inferred that Mr. Silverman actively participated in or orchestrated the alleged scheme, or had anything at all to do with any of RCM's customers, much less that he made false representations to those customers.

Plaintiffs' reliance on their oft-repeated "Officer Defendants" is insufficient. Section 10(b) liability does not extend to aiders and abettors; the defendant, himself, must have committed a deceptive act on which the plaintiff relied. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 769 (2008); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004). The Complaints not only fail to allege such necessary and basic particulars as to Mr. Silverman, but, in fact, they specifically allege that *other* individuals at Refco, not Mr. Silverman, actively participated in the alleged scheme. Plaintiffs allege, for example, that:

- Philip Bennett and Santo Maggio directed Thomas Yorke and others at Refco to convert and transfer RCM customer securities, and supervised the alleged scheme. VR Compl. ¶¶ 117, 119, 255, 257; CM Compl. ¶¶ 108, 110, 173, 175.

- Richard Outridge oversaw and was responsible for RCM's financial affairs, was directly involved in the day-to-day management of RCM from 2001 onward, was "heavily involved" in the preparation of RCM's financial statements, oversaw the transfers of converted RCM securities, and participated in, orchestrated, and supervised the alleged fraudulent scheme. VR Compl. ¶ 263; CM Compl ¶ 181.

- Adam Weiss induced the VR Plaintiffs to open accounts with RCM (VR Compl. ¶¶ 84-86); Thomas Yorke, Stafford Bucknall Rodrigo Alvarez, Victor Enriquez, Sixto Campano, and Carlos Alvarez did the same with the CM Plaintiffs. CM Compl. ¶¶ 64-66, 76-77.

Plaintiffs argue nonetheless that the Complaints should survive a Rule 12(b)(6) motion

3

because, at the very least, they allege that "each of the Officer Defendants": (1) "knew about the fraudulent scheme," and (2) "at a minimum, failed to put an end to the scheme." Pltfs. Mem. at 80. Even if the Complaints actually made that claim – and they do not[3] – failing to "put an end" to a scheme, without more, does not constitute "deceptive conduct" proscribed by Rule 10b-5(a) and (c) absent a breach by Mr. Silverman of a fiduciary duty that he, himself, owed to RCM's customers. *See RCM-I*, 2007 WL 2694469, at **7-9.

The Complaints, however, do not specifically allege – as they do with RCM and other individual Defendants – that Mr. Silverman owed any fiduciary duty to Plaintiffs, nor do they allege any factual basis for such a claim.[4] The Complaints do not allege that he was an officer or director of RCM. Even if they had, Plaintiffs still could not establish the existence of a fiduciary relationship on that basis because a corporate officer does not owe a fiduciary duty to a corporation's customers. *See Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*, No. 05 Civ. 8988 (GEL), 2007 WL 1732427, at *4 (S.D.N.Y. June 14, 2007) (Lynch, J.); *A.I.A. Holdings, S.A. v. Lehman Bros. Inc.*, No. 97 Civ. 4978 (LMM), 1999 WL 47223, at *6 (S.D.N.Y. July 26, 1999). Nor do Plaintiffs point to any allegations from which it can be inferred that they reposed trust and confidence in Mr. Silverman. Unlike others they name in the Complaints (*see* VR Compl. ¶¶ 84-86; CM Compl. ¶¶ 64-66, 76-77), Plaintiffs do not allege that Mr. Silverman had any dealings of any kind with RCM's customers, or, indeed, that RCM's customers even were aware of Mr. Silverman or relied on anything he did or said.[5]

---

[3] The Complaints *do not* actually allege that Mr. Silverman "knew about the fraudulent scheme," only that he "either knew, or was reckless in not knowing" that the scheme was occurring. VR Compl. ¶ 259; CM Compl. ¶ 177.

[4] For the reasons explained in the THL Defendants' reply, RCM, itself, also did not owe Plaintiffs any fiduciary duty, nor were the Plaintiffs victims of any deception.

[5] The failure to plead reliance is independently fatal to Plaintiffs' scheme liability claim.

(Footnote continued)

4

The alleged failure of the "Officer Defendants" to "put an end" to the scheme thus boils down to nothing more than a claim of nonactionable aiding and abetting. *See Stoneridge*, 128 S. Ct. at 769; *In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455, 473 (S.D.N.Y. 2004) (Lynch, J.) (noting that primary violations generally apply only to "inside actors who actively participated in or orchestrated the fraudulent scheme alleged"). Plaintiffs rely on *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1471 (2d Cir. 1996), which quotes *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994), for the proposition that it is enough to assert that a defendant "had knowledge of the fraud and assisted in its perpetration." *See* Pltfs. Mem. at 77. Plaintiffs' reliance on *First Jersey*, however, is misplaced. As Judge Kaplan later observed in *Parmalat*:

> [*Azrielli*] was decided before *Central Bank* and did not distinguish between primary and aiding and abetting liability. Indeed, the elements set forth in the earlier opinion and quoted in *First Jersey Securities* – knowledge coupled with assistance – practically define aiding and abetting, not a primary violation.

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 501 (S.D.N.Y. 2005). Moreover, the proof adduced at trial in *First Jersey* plainly established primary violator liability on the part of the defendant in that case, because he was the sole owner and chief executive officer of the broker defendant and he had personally masterminded and directed the broker's fraudulent scheme. *First Jersey*, 101 F.3d at 1472. By contrast, here, Plaintiffs do not plead facts from which it can be inferred that Mr. Silverman masterminded, directed, or actively participated in the RCM Securities Scheme. Plaintiffs thus have alleged no basis for their claim. *See Stoneridge*, 128 S. Ct. at 769; *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511

---

*Stoneridge*, 128 S. Ct. at 769-70; *see also Pugh v. Tribune Co.*, 521 F.3d 686, 696-97 (7th Cir. 2008) (scheme liability claim dismissed because the plaintiffs did not know of the officer's wrongdoing and therefore could not have relied on it); *Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707 (JGK), 2008 WL 762105, at *2 (S.D.N.Y. Mar. 24, 2008) (same).

5

U.S. 104 (1994).

## II. Plaintiffs Also Have Not Pled Scienter as to Mr. Silverman

### A. Plaintiffs Have Not Pled *Any* Allegations Concerning Mr. Silverman's Motive

Plaintiffs do not even attempt in their opposition to identify a single benefit that Mr. Silverman received from Refco that might have motivated him to participate in a fraud. *See* Silverman Mem. at 13-15. Instead, Plaintiffs employ the same sleight-of-hand technique they used in their Complaints to conceal their failure to allege motive as to Mr. Silverman:

- first, they argue that the "Officer Defendants" had incentive to participate in the alleged scheme because they "stripped in excess of $1 billion from Refco through sales of equity interests in the LBO, enormous outright grants of Refco common stock, the greenshoe oversubscription option on the IPO, RSUs, and bonus and compensation plans." *See* Pltfs. Mem. at 75; *see also* VR Compl. ¶ 490; CM Compl. ¶ 309.

- then, they identify the defendants who actually received those benefits – Bennett, Murphy, Sexton, and Maggio, and the THL defendants – without acknowledging that the Complaints do not allege that Mr. Silverman was among the recipients. *See* Pltfs. Mem. at 74-76; *see also* VR Compl. ¶¶ 488-503; CM Compl. ¶¶ 307-322.[6]

- finally, they mislead the Court by concluding that, "[v]iewed individually, each of these financial benefits gives rise to an inference that *each* of the Officer Defendants had motive to commit fraud" (Pltfs. Mem. at 75-6) (emphasis added), when the Complaints do not allege that Mr. Silverman received *any* of these, or any other, financial benefits.

By not responding to Mr. Silverman's specific arguments concerning their failure to adequately allege "motive," Plaintiffs concede them. *See, e.g.*, *RCM-I*, 2007 WL 2094469, at *6.

---

[6] Plaintiffs are forced in their opposition to acknowledge that Mr. Silverman did not receive the "green shoe" dividend. They attempt, however, to avoid drawing attention to their acknowledgement by simply inserting a parenthetical, "other than Silverman," next to "Officer Defendants" when identifying the beneficiaries of the green shoe dividend. *See* Pltfs. Mem. at 74. Even so, in the following two pages, when referring to the other cash and benefits they rely on, Plaintiffs revert to the form of their Complaints by simply referring to the "Officer Defendants," even though the Complaints specifically make clear – and Plaintiffs do not deny – that other individuals, not Mr. Silverman, were the ones who received the Refco cash and stock. *See* Pltfs. Mem. at 75-76.

6

### B. Plaintiffs Also Fail to Allege Facts Sufficient to Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

Plaintiffs do not deny that their inability to plead "motive and opportunity" as to Mr. Silverman means that they must plead factual allegations that "constitute strong circumstantial evidence of conscious misbehavior and recklessness" (*Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004)), and that "the strength of the circumstantial allegations [regarding scienter] must be correspondingly greater" because of their failure to plead motive and opportunity. *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 367 (S.D.N.Y. 2001). Yet Plaintiffs do not even come close to meeting this heightened pleading burden; they resort instead to embellishing and mischaracterizing their own pleadings.

They do this by substituting the names of Sexton, Murphy, Silverman, and Trosten in their opposition when citing to the allegations in their Complaints when the Complaints, themselves, do nothing more than conclusorily refer to the "Officer Defendants," a much larger group that actually also is alleged to include Bennett, Grant, Outridge and Maggio. VR Compl. ¶ 60; CM Compl. ¶ 43. For example:

- *Compare e.g.*, **Pltfs. Mem.** at 69: "On an almost daily basis, Sexton, Murphy, Silverman, and Trosten directed Refco employees to sell securities that Plaintiffs and other RCM customers had entrusted to RCM"; *with*

  **VR Compl.** ¶ 5; **CM Compl.** ¶ 4: "On an almost daily basis, R*efco senior management, including the Officer Defendants*, directed Refco employees to sell . . . securities owned by Plaintiffs and other RCM customers that had been entrusted to RCM." (emphasis added).

- *Compare e.g.*, **Pltfs. Mem.** at 69: "Sexton, Murphy, Silverman and Trosten . . . directed the fraudulent raid on the RCM customer accounts"; *with*

  **VR Compl.** ¶ 5, **CM Compl.** ¶ 4: "[A]t the direction of the *Officer Defendants*, Refco raided the RCM customer accounts." (emphasis added).

Plaintiffs even go so far as to falsely suggest that the Complaints allege certain facts that the Complaints do not allege at all, including:

7

- that Sexton, Murphy, Silverman, and Trosten were "[a]ware of RCM's obligations to hold Plaintiffs' and other customers' securities in safekeeping." Pltfs. Mem. at 69.

- that "each of [the Officer Defendants] took steps to conceal information about Refco." Pltfs. Mem. at 3.

- that "[i]n supervising Refco's finances, Silverman directed and oversaw the fraudulent sale of customer securities." Pltfs. Mem. at 72.

The Complaints actually contain none of those allegations, certainly not as to Mr. Silverman. To the contrary, the Complaints' allegations that specifically identify the defendants who were involved in the scheme never mention Mr. Silverman. (*See* Section I, *infra*).

Plaintiffs even mischaracterize the Complaints' actual allegations concerning Mr. Silverman's responsibilities at Refco. They misleadingly claim, for example, that,

> *[a]s Secretary and Controller of RGL, RGHI and other Refco subsidiaries*, Silverman "was directly responsible for overseeing intercompany and related-party transactions."

Pltfs. Mem. at 71 (emphasis added). The Complaints, however, actually allege that those enumerated responsibilities flowed solely from Mr. Silverman's alleged position as Controller of RGL, not from any other position he purportedly held at Refco. *See* VR Compl. ¶ 259, CM Compl. ¶ 177 ("*As Controller*, Silverman was directly responsible for overseeing intercompany and related-party transactions") (emphasis added). This is a significant embellishment, because Plaintiffs' counsel previously represented to the court in the Refco bankruptcy proceedings that Frank Mutterer, and not Mr. Silverman, was RGL's Controller. Plaintiffs thus are estopped from now alleging otherwise.[7] Plaintiffs do not deny this even

---

[7] A party is judicially estopped from deliberately changing position to suit its convenience when the party took an inconsistent position in a prior proceeding, and that position was adopted by the court. *New Hampshire v. Maine*, 532 U.S. 742, 749-52 (2001); *Bates v. Long Island R.R.*, 997 F.2d 1028, 1038 (2d Cir. 1993). In this case, during the Refco bankruptcy proceedings, Plaintiffs, through the Milbank firm, their counsel here who were then representing Refco's unsecured creditors, asserted, correctly, that "Frank Mutterer was the controller of RGL," and *not* Mr. Silverman. *See* Supplemental Motion of Official Committee of Unsecured Creditors for Order Under 11 U.S.C. § 1103(c) at ¶ 29, *In re Refco, Inc.*, No. 05-60006 (Bankr. S.D.N.Y., *filed* May 23, 2006), *available at*

(*Footnote continued*)

though we noted this previous contrary representation already. *See* Silverman Mem. at 8, n.5.

Plaintiffs also embellish Mr. Silverman's responsibilities by asserting that his

> job responsibilities included monitoring and assessing outstanding intercompany receivables like the $2.4 billion one that resulted from the fraudulent conversion of entrusted customer securities.

Pltfs. Mem. at 72. Nowhere do the Complaints specifically allege that Mr. Silverman "monitored and assessed intercompany receivables," or, more importantly, that he ever reviewed the purported $2.4 billion receivable resulting from the conversion of RCM customers' securities. Plaintiffs may not amend their Complaints by way of their opposition brief. *E.g., Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Volmar Distribs., Inc. v. New York Post Co.*, 899 F. Supp. 1187, 1194 (S.D.N.Y. 1994).

Stripped of these inaccurate characterizations, Plaintiffs' allegations of conscious misbehavior and recklessness boil down to nothing more than the conclusory claim that the "Officer Defendants" "had to know" of the scheme because (1) they were high-level officers of RCM's parent company, and (2) the "misuse of customer securities was an open secret within Refco, and common knowledge among Refco's employees such as Thomas Yorke." *See* Pltfs. Mem. at 73. These arguments, however, fall well short of raising a strong inference that *Mr. Silverman* acted with fraudulent intent. *See, e.g., Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) (affirming lower court's decision that conscious misbehavior or recklessness could not be inferred from purported warnings to parent company, even if true, that its subsidiary

---

http://www.refcodocket.com/DocketFiles/1940.pdf. Their allegation was adopted by the Bankruptcy Court. *See* Order, Under 11 U.S.C. § 1103(c) and Bankruptcy Rule 2004, Directing Production of Documents by Certain Persons, *In re Refco, Inc.*, No. 05-60006 (Bankr. S.D.N.Y., *filed* June 15, 2006), *available at* http://www.refcodocket.com/DocketFiles/2187.pdf. Accordingly, Plaintiffs are judicially estopped from asserting that Mr. Silverman was "Controller" of RGL, and the Court should disregard all of the allegations concerning the responsibilities they claim he had as Controller of RGL. Judicial estoppel removes this from the argument that the issue is a mere factual dispute.

was engaging in fraud); *In re Marsh & McLennan Cos.*, 501 F. Supp. 2d 452, 484 (S.D.N.Y. 2006) ("Simply arguing that specific high level employees must have known what was taking place at Marsh because certain subordinate employees were later implicated in the fraud is insufficient"). *See also, Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007) ("there is a big difference between knowing about the reports from [a subsidiary] and knowing that the reports are false. The complaint documents the former but not the latter.").[8]

## III. Plaintiffs' Controlling Person Claim As To Mr. Silverman Also Fails

Plaintiffs protest that the Complaints' controlling person claims "do not rest solely on the allegations that the Officer Defendants held executive positions" (Pltfs. Mem. at 91), yet with respect to Mr. Silverman, that is precisely what the Complaints do. *See* Silverman Mem. at 27-29. Plaintiffs do not deny that, unlike their claims concerning other defendants' control over RCM,[9] they have no specific allegations concerning Mr. Silverman. The allegations as to him are wholly conclusory and do not permit an inference that he had actual control over RCM or the transactions in question, and are thus insufficient as a matter of law. *E.g., In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005, at *12 (Aug. 8, 2005).

---

[8] Unable to allege any facts from which scienter may be inferred as to Mr. Silverman, Plaintiffs are reduced to citing the government's list of unindicted co-conspirators filed in the Grant criminal prosecution. *See* Pltfs. Mem. at 72, Decl. of Sander Bak, Ex. A. Even beyond the fact that Plaintiffs cannot escape their pleading burden by referring to matters outside the Complaints (*see, e.g., Fonte*, 848 F.2d at 25), the government's list proves nothing. The sole purpose of any such list is to permit a prosecutor to argue for the introduction of out-of-court statements under Fed. R. Evid. 801(d)(2)(E). The list is not admissible against Mr. Silverman in any proceeding; it reflects nothing more than some unsubstantiated allegations in an unrelated proceeding to which Mr. Silverman was not a party. Moreover, the criminal action involved different alleged wrongdoing by different parties. Plaintiffs' reliance on the government's list thus is as ineffectual as it is improper.

[9] *E.g.*, (1) Bennett, Maggio, Sexton, and Murphy had key employment agreements (VR Compl. ¶ 509; CM Compl. ¶ 328); (2) Bennett and Grant were significant shareholders of Refco (VR Compl. ¶¶ 505, 510, 512; CM Compl. ¶ 324); (3) Bennett, Maggio, and Grant were masterminds, organizers, or supervisors of the RCM Securities Scheme (VR Compl. ¶¶ 255, 257, 264; CM Compl. ¶¶ 173, 175, 181); and (4) Bennett, Grant, Maggio, and Trosten were the "Bennett Co-Conspirators" (VR Compl. ¶ 30).

Further, Plaintiffs do not deny that their conclusory allegations as to Mr. Silverman are flat out contradicted by the Refco SEC filings "tout[ing] the key roles played by the Officer Defendants in Refco's operations" upon which Plaintiffs rely. VR Compl. ¶¶ 507-8, CM Compl. ¶¶ 326-27. Refco never included Mr. Silverman in its listings of senior management because Refco, itself, never considered him to be an officer who occupied a controlling position.[10] Plaintiffs choose to ignore this inconvenient fact.

What Plaintiffs are left with as to Mr. Silverman, then, are allegations of his officer status at Refco (not RCM) and various of its affiliates (not RCM). Mere allegations of officer status, however, are insufficient to state a claim for controlling person liability. *See, e.g. In re Global Crossing*, 2005 WL 1907005, at *12 ("Officer or director status alone does not constitute control."). That is especially true when, as here, the defendant is not even alleged to have been an officer of the primary violator (RCM), but only of a corporate affiliate. *See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898 (SAS), 2005 WL 2148919, at *15 (S.D.N.Y. Sept. 6 2005) ("[t]he allegation that [defendant] was an officer and director of the parent corporation of a primary violator, standing alone, is insufficient to plead a claim under section 20(a).").[11]

---

[10] The following individuals are described in one or more of the SEC filings cited by Plaintiffs: Bennett, Murphy, Trosten, Sexton, Maggio, Harkins, Jaeckel, Lee, Schoen, Klejna, Gantcher, Lee, Breitman, and O'Kelley. *See* Cashman Decl., Exs. 1-3. Mr. Silverman, by contrast, is not listed at all.

[11] Plaintiffs' reliance on this Court's controlling person ruling as to Mr. Silverman in the Refco Securities Litigation is inapposite. The primary violator in that case was Refco, not RCM, and the Securities case was not based on the RCM scheme. Plaintiffs' claims must rise or fall on the allegations of their own complaints.

Plaintiffs' controlling person claims also fail because they do not adequately plead "culpable participation" as to Mr. Silverman for the reasons cited in Section I above. *See also* Silverman Mem. at 29-30.

11

IV.  **Plaintiffs' Rule 10b-16 Claims Should Be Dismissed**

Plaintiffs' opposition also does not save their Rule 10b-16 claims.

**First**, in *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court established a clear framework for evaluating whether an implied private statutory right of action exists. Yet Plaintiffs do not – because they cannot – attempt to establish that their Rule 10b-16 claims survive *Sandoval*. They rely instead on a smattering of stale, non-binding authority that predates *Sandoval*.[12]

Try as they might, Plaintiffs cannot avoid their burden under *Sandoval* of demonstrating a clearly expressed congressional intent to recognize both a private right of action and a private remedy under Rule 10b-16. *Sandoval*, 532 U.S. at 286-287. As the Second Circuit has made clear, reliance on pre-*Sandoval* authority is misplaced because "[w]hen those cases were decided . . . courts had more latitude to weigh statutory policy and other considerations than they do now." *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433-34 & n.4 (2d Cir. 2002); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007). Indeed, "[p]ast decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an *'ancien regime.'*" *Olmstead*, 283 F.3d at 434; *Bellikoff*, 481 F.3d at 117.

---

[12] Because Plaintiffs are forced to concede that the Second Circuit has never recognized an implied Rule 10b-16 right of action, they rely on three opinions by other Circuits decided between twenty-three and thirty-two years ago and three opinions from district courts in this Circuit which were decided sixteen and twenty-four years ago (*see* Pltfs. Mem. at 94-95) – all decided long before *Sandoval*. Plaintiffs trumpet that "every court of appeals that has addressed the issue" (only three of them) has recognized a private right of action under Rule 10b-16 (*see* Pltfs. Mem. at 94). Both the Second and Eleventh Circuits, however, have declined to decide the issue, and none of the other seven Circuits has even considered the issue. *See Zerman v. Ball*, 735 F.2d 15, 23 (2d Cir. 1984); *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1358 (11th Cir. 1985). Plaintiffs contend that the three district court opinions they cite represent the "majority" in this Circuit. They ignore that one of those cases, *Chemical Bank v. Shearson Lehman Bros., Inc.*, 91 Civ. 4915, 1992 WL 183760, at *2 (S.D.N.Y. July 21, 1992), merely assumed the existence of a right of action without discussing the issue, and that two contrary district court opinions concluded that an implied right of action under Rule 10b-16 *does not* exist. *See* Silverman Mem. at 20, n.12.

12

Plaintiffs concede that the Second Circuit, applying *Sandoval*, has twice declined to recognize implied private rights of action under certain sections of the Investment Company Act ("ICA"). *See Olmstead*, 283 F.3d at 429; *Bellikoff*, 481 F.3d at 117. They nevertheless attempt to distinguish *Olmstead* and *Bellikoff* by arguing that the Second Circuit merely declined to recognize an implied right of action where none previously had been recognized. That is wrong. In *Bellikoff*, the court explicitly declined to recognize an implied right of action under Sections 34(b), 36(a) and 48(a) of the ICA, even though, prior to *Sandoval*, courts had widely recognized implied private rights of action under each of those Sections. *Bellikoff*, 481 F.3d at 117 ("[Plaintiffs'] reliance on a 'long line of decisions recognizing implied private rights of action' under the ICA is misplaced.").[13]

Plaintiffs do not even attempt to address Mr. Silverman's detailed arguments that:

- Quite unlike the case with Rule 10b-5, and contrary to Plaintiffs' claims, suits under Rule 10b-16 have not enjoyed anything close to a uniform acceptance by the courts or Congress.[14] *See* Silverman Mem. at 21-22;

- Rule 10b-16 is not directly related to the provisions of Section 10(b). Rather, it was

---

[13] *See, e.g., Brown v. Bullock*, 194 F. Supp. 207 (S.D.N.Y. 1961), *aff'd* 294 F.2d 415 (2d Cir. 1961) (implying private right of action under ICA § 34(b)); *Strougo v. Scudder*, 964 F. Supp. 783 (S.D.N.Y. 1997) (implying right of action under ICA § 36(a)); *Jerozal v. Cash Reserve Mgmt., Inc.*, 1982 WL 1363 (S.D.N.Y. 1982) (implying private right of action under ICA § 48(a)). *See also* H. Norman Knickle, *The Investment Company Act of 1940: SEC Enforcement and Private Actions*, 23 Ann. Rev. Banking & Fin. L. 777 (2004) ("virtually every decision from 1962 to 2000 indicated that private actions could be implied under the 1940 Act, leading to successful suits covering virtually all of the significant sections of the Act.").

Plaintiffs' further attempt to distinguish *Olmstead* and *Bellikoff* on the ground that they dealt with implied private rights of action under the ICA, not Section 10(b), also is to no avail. *See* Pltfs. Mem. at 97, n.224 In *Stoneridge* the Court refused to expand the boundaries of the Section 10(b) implied private right of action to include scheme liability. 128 S. Ct. at 773. Plaintiffs offer no reason why a similar effort to expand Section 10(b) liability by adding a Rule 10b-16 claim should not suffer the same fate.

[14] Because Plaintiffs must establish that Congress expressly intended to create a private right of action under Rule 10b-16, their claim that a Rule 10b-16 implied right of action had been widely accepted by the courts when the PSLRA was enacted is irrelevant. It is also simply incorrect. *See* n.12, *supra*.

promulgated by the SEC in response to the Truth in Lending Act. *See id.* at 22;

- Rule 10b-16 does not evince an intent to provide an implied private right of action because "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons'" *Olmstead*, 283 F.3d at 433 (quoting *Sandoval*, 532 U.S. at 289). *See id.* at 23.

**Second**, Plaintiffs' assertion that "there is no basis" to claim that Rule 10b-16 applies only to broker-dealers (*see* Pltfs. Mem. at 100) simply ignores the plain language of the Rule itself which explicitly limits its application to broker-dealers:

> It shall be unlawful for any *broker or dealer* to extend credit, directly or indirectly, to any customer in connection with any securities transaction unless such *broker or dealer* has established procedures to assure that each customer [is given certain written statements and disclosures].

17 C.F.R. § 240.10b-16(a) (emphasis added).[15] Plaintiffs' argument that Rule 10b-16 may be applied against any individual is thus off the mark. The courts in *Liang v. Dean Witter & Co.*, 540 F.2d 1107 (D.C. Cir. 1976), *Chemical Bank*, 1992 WL 183760, and *Metzner v. D.H. Blair & Co.*, 689 F. Supp. 262 (S.D.N.Y. 1988), applied the Rule only to agents of broker-dealers who themselves had interacted directly with the injured customers.[16] Plaintiffs do not allege – nor can they – that Mr. Silverman was a broker-dealer, or that he ever interacted with any of RCM's customers.

**Third**, Plaintiffs' claims under Rule 10b-16 would be time-barred in any event. Plaintiffs do not address the authorities we have cited holding that the limitations period for a Rule 10b-16 claim begins with the opening of a customer's account.[17] Plaintiffs also are wrong

---

[15] Rule 10b-5, by contrast, explicitly applies to "any person."

[16] *Metzner* also applied the Rule to the broker-dealer defendant's "president and principal executive and operating officer" under a controlling person theory. Mr. Silverman, however, is not alleged to have been an officer of RCM. Nor do Plaintiffs adequately allege that he was a controlling person of RCM. *See* Section III, *infra.*

[17] *See Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237, 245 (S.D.N.Y. 1996); *Komanoff v. Mabon, Nugent & Co.*, 884 F. Supp. 848, 859 (S.D.N.Y. 1995).

14

in claiming that the question of when they first learned of the alleged Rule 10b-16 violation is a factual matter not appropriate for resolution on a motion to dismiss. To the contrary, the Second Circuit repeatedly has affirmed dismissal of actions on limitations grounds where facts alleged in the complaints gave rise to a duty of inquiry.[18]

## CONCLUSION

Mr. Silverman's motions to dismiss the Complaints should be granted, and the Complaints should be dismissed as to him in their entirety, with prejudice.

Dated: New York, New York
       June 9, 2008

Respectfully submitted,

HELLER EHRMAN LLP
By      /s/ Richard Cashman
    Lawrence J. Zweifach (LZ-8641)
    lawrence.zweifach@hellerehrman.com
    Richard Cashman (RC-4769)
    richard.cashman@hellerehrman.com
    Eric Creizman (EC-7684)
    eric.creizman@hellerehrman.com
Times Square Tower
7 Times Square
New York, New York 10036-6524
Telephone: (212) 832-8300
Facsimile: (212) 763-7600

*Attorneys for Defendant Philip Silverman*

---

[18] *See, e.g., LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148, 156 (2d Cir. 2003); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir. 1994).

15