# Exhibit C

```
 1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
                                          :
 4    In Re:                              :   Case No. 05-60006
                                          :
 5       REFCO, INC., et al,              :
                                          :   One Bowling Green
 6                                        :   New York, NY
                            Debtors.      :   February 14, 2006
 7    ------------------------------------X

 8
                       TRANSCRIPT OF TRIAL
 9         BEFORE THE HONORABLE ROBERT D. DRAIN
                UNITED STATES BANKRUPTCY JUDGE
10

11    APPEARANCES:

12

13    For the Debtors:          ANTHONY W. CLARK, ESQ.
                                 SKADDEN, ARPS, SLATE, MEAGHER
14                                 & FLOM, LLP
                                 One Rodney Square, P.O. Box 636
15                               Wilmington, DE

16                               GRENVILLE R. DAY, ESQ.
                                 SKADDEN, ARPS, SLATE, MEAGHER
17                                 & FLOM, LLP
                                 Four Times Square
18                               New York, NY  10036

19    For the Movants:          THOMAS J. MOLONEY, ESQ.
                                 CLEARY GOTTLIEB STEEN
20                                 & HAMILTON LLP
                                 One Liberty Plaza
21                               New York, NY  10006

22    For Josephina Franco      JAMES W. GIDDENS, ESQ.
      Siller:                   HUGHES HUBBARD & REED LLP
23                               One Battery Park Plaza
                                 New York, NY  10004

24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service.
```

1                          UNITED STATES BANKRUPTCY COURT
                             SOUTHERN DISTRICT OF NEW YORK
2

3
     For Capital Management      DANIEL M. LITT, ESQ.
4    Select Fund, Ltd.:          DICKSTEIN SHAPIRO MORIN
                                      & OSHINSKY LLP
5                                2101 L Street, N.W.
                                 Washington, DC  20037
6

7

8    Court Transcriber:          TRACY A. GEGENHEIMER, CERT*D-282
                                  TypeWrite Word Processing Service
9                                 356 Eltingville Boulevard
                                  Staten Island, NY  10312
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                         INDEX

2

3   Witness           Direct        Cross      Redirect       Recross

4   Richard Deitz       65           154

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deitz - Cross                                    174

1   Q    Let's look at the 2001 audited financial statements.  I
2   don't have a Bates number for you but it should be somewhere in
3   that stack I think in reverse chronological order.  Do you --
4   this is the consolidated financial statements as of February
5   28, 2001.
6             THE COURT:  It's the black binder, right?
7             MR. CLARK:  It's my exhibits, my questions, my
8   exhibits.
9             MR. ROSSMAN:  Your Honor, my exhibit doesn't have a
10  Bates numbers on it.
11            MR. CLARK:  Mine doesn't either.
12            MR. ROSSMAN:  Mr. Clark, was it produced?
13            MR. CLARK:  Yes, it was but I don't have the Bates
14  stamp ones and if there's any question as to authenticity as
15  we've all agreed we can clear it up during the break.
16            MR. ROSSMAN:  Just wanted to know if you got it.
17  BY MR. CLARK:
18  Q    So you got the February 2001 financial statements, Mr.
19  Deitz?
20  A    Yes.
21  Q    You made the point that when you entered into your
22  business arrangements with Refco Capital Markets you understood
23  them to be an unregistered, unregulated Bermuda broker dealer;
24  right?  That's what they were.
25  A    I said that.

Deitz - Cross

177

1   1999 either?

2   A    I don't believe they were provided to me.

3   Q    So you didn't look at them?

4   A    That would be the implication, yes.

5   Q    Right.  It's easy.  I'll ask the question --

6        THE COURT:  Come on, Mr. Clark.  Please.

7   Q    Now, you also -- we'll come back to that.  You can put

8   that to one side.

9        You, did you not before you entered into business with

10  Refco Capital Markets that it had an affiliate by the name of

11  Refco Securities LLC; is that true?

12  A    We were told that, yes.

13  Q    Were you told what that entity was?

14  A    We were told that it was a U.S. -- we were told it was a -

15  - Refco Securities LLC was a U.S. regulated broker dealer and

16  that Refco Capital Markets was a Bermuda broker dealer non-

17  regulated.

18  Q    But you never were told that before you entered into the

19  first contract in a document, were you?  You didn't get a piece

20  of paper from somebody that said we're a broker dealer, Refco

21  Capital Markets is a broker dealer?  You did not obtain a piece

22  of paper --

23  A    I got a securities account from a broker dealer.  What can

24  I say?

25  Q    Well, you can answer my question.

Deitz - Cross                                    196

1   Q    Correct it.

2   A    It's on the record.  I think we've seen it.  There's a

3   customer agreement, a single customer agreement which a tri-

4   party agreement.  You -- that it's two separate agreements but

5   I think it's actually one agreement.

6   Q    I'm not trying to -- anything.  I'm trying to understand.

7   Did you open an account -- let us go to your -- did you open an

8   account at Refco LLC?

9   A    Refco LLC, I believe so.

10  Q    What -- for edification, what did you understand Refco LLC

11  to be when you opened that account?

12  A    It was a futures commission [inaudible].

13  Q    Registered and regulated as such?

14  A    Yes.

15  Q    Now, Refco Securities, part of this tri-part agreement

16  when you entered into this agreement in September 2001, you

17  understood that Refco Securities was what?

18  A    It was a U.S. broker dealer.

19  Q    Registered, regulated?

20  A    Yes.

21  Q    And then RCM, you understood, wasn't an U.S. registered or

22  regulated broker dealer when you entered into the agreement;

23  right?

24  A    I think --

25  Q    Right?

Deitz - Cross                              197

1  A    Yes.

2  Q    And your understanding of Refco Capital Markets in that

3  regard never changed, did -- you always understood it to be an

4  unregulated unregistered entity; right?

5  A    Correct.

6  Q    Now, you said that prior to coming to Refco you had used

7  Bank of Bermuda for clearing settlement custody services;

8  right?

9  A    Correct.

10 Q    You wanted to change because Bank of Bermuda didn't

11 provide satisfactory services; is that fair?

12 A    We were unsatisfied with the level of services we were

13 getting.

14 Q    Among other things you said, I believe, that there were

15 numerous settlement failures in your transactions with Bank of

16 Bermuda; correct?

17 A    When I say settlement failures, I did say that and let me

18 explain what I --

19 Q    That's my next question.  Tell me what they have.

20 A    I'd be happy to do so.  When I say settlement failure what

21 I mean for instance an instruction wasn't put in on time.  So

22 that a security -- if I traded with Merrill Lynch and it was

23 supposed to settle into my Bank of Bermuda account if that

24 instruction wasn't put into the Euroclear system from Bank of

25 Bermuda's side then the transaction would fail and then we