# EXHIBIT C

```
                                                        Page 1
 1           CONFIDENTIAL - Balzaretti
 2   UNITED STATES BANKRUPTCY COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   -------------------------------x
 5
 6   In Re:  REFCO INC., et al.
 7       Debtors Case No. 05-03064
 8
 9   -------------------------------x
10              ***CONFIDENTIAL***
11   VIDEOTAPED DEPOSITION OF FERNANDO BALZARETTI
12              New York, New York
13              February 8, 2006
14
15   Reported by:
16   KATHY S. KLEPFER, RPR, RMR, CRR
17   JOB NO. 6116
18
19
20
21
22
23
24
25
```

**Page 46**

CONFIDENTIAL - Balzaretti

    MR. GLICK: Objection.
  A.  She recently retired to become a full-time mom.
  Q.  When did she start working for you as your assistant?
  A.  At -- I don't have the exact date.
  Q.  Approximately?
  A.  In '97, '98.
  Q.  And did you in fact access your RCM account online?
  A.  We accessed our Refco account online all the time, yes.
  Q.  You keep saying "Refco." Can I take that to mean RCM?
  A.  As I said before, I just learned to differentiate between RCM and Refco. To me, I had always referred as Refco as one entity, and I was not aware that I was dealing with separate entities.
  Q.  Did IDC have more than one account at Refco within the Refco Group?
  A.  No.
  Q.  So the RCM account was the only account?

**Page 47**

CONFIDENTIAL - Balzaretti

  A.  Yes.
  Q.  What -- when you accessed -- when IDC accessed the account online, what could you see online?
  A.  The purpose of accessing it online was to review that the trades executed during the day were properly reflected and that we could do a, what is called a marked to market valuation of the account on a daily basis.
  Q.  And you would perform the marked to market valuation yourself?
  A.  Yes.
  Q.  Was there any marked to market valuation reflected on the RCM online?
  A.  Yes.
  Q.  What else could you see?
  A.  I could see any transaction that they had done -- that had been done, and all the positions held in the account.
  Q.  Could you see the financing?
  A.  You could see the financing.
  Q.  Could you see the coupon payments?
  A.  You could see the coupon payments.
  Q.  Anything else?

**Page 48**

CONFIDENTIAL - Balzaretti

  A.  You could see any activity that took place in the account.
  Q.  And you would check this frequently for accuracy?
  A.  We would check it on a daily basis.
  Q.  When you say "we would check it," you would check it?
  A.  I would check it or my assistant would check it.
  Q.  Your assistant, Ingrid?
  A.  Yes.
  Q.  Anybody else at IDC check it?
  A.  No.
  Q.  What about confirms, where were they sent?
  A.  They were sent to our address of record.
  Q.  Which was?
  A.  I don't know if it was Guatemala or a P.O. Box in Miami. It got to be one of the two.
  Q.  Did you receive them?
  A.  Did I receive them? I never saw them. I would look at the daily transaction on the Internet.

**Page 49**

CONFIDENTIAL - Balzaretti

  Q.  So the daily transaction was reflected online?
  A.  Yes.
  Q.  What about account statements?
  A.  Account --
  Q.  Were they physically sent?
  A.  Yes.
  Q.  Where to?
  A.  To the address of record.
  Q.  Did you receive those?
  A.  Did I personally receive those?
  Q.  Yes.
  A.  No.
  Q.  Do you know anyone at IDC who did?
  A.  Yes.
  Q.  Who was that?
  A.  My assistant, who would file them, until the following month, and then they would be destroyed.
  Q.  Did you review those?
  A.  No.
  Q.  Did you review them online?
  A.  Yes.
  Q.  Were they format online, to your

TSG Reporting - Worldwide   212-702-9580

Page 154

CONFIDENTIAL - Balzaretti

2  MS. CLEGHORN: I believe that's it. I
3  don't have any further questions.
4      Anybody else care to question the
5  witness?
6      MS. DAVIDSON: Mr. Glick has some
7  questions.
8  EXAMINATION BY
9  MR. GLICK:
10     Q.  Mr. Balzaretti, you testified earlier
11 that you had -- your clients, I should say, had
12 accounts at Bear Stearns and also at Refco. You
13 also testified that there was another entity
14 that was somehow tied into the Bear Stearns
15 account.
16     Could you explain who that entity was
17 and its -- that entity's relationship to Bear
18 Stearns?
19     A.  Yes. It's a U.S. broker-dealer that
20 clears and custodies through Bear Stearns. So
21 my account statements come with the logo of this
22 entity, which at this time is called EFG, and
23 the logo and statement of Bear Stearns.
24     We've had -- since we opened the
25 accounts, there have been three different

TSG Reporting - Worldwide    212-702-9580

Page 155

CONFIDENTIAL - Balzaretti

2  changes. It started as Vestrust Securities.
3  Vestrust Securities was later bought by
4  Dresdner, and Dresdner was later bought by EFG.
5      Q.  Were each of those three entities that
6  you just mentioned U.S. broker-dealers, to your
7  knowledge?
8      A.  Yes.
9      Q.  And the relationship of Bear Stearns,
10 was that with all three of those entities
11 consistently throughout your relationship with
12 them?
13     A.  Yes.
14     Q.  And did Bear Stearns simply do the
15 custodial and the execution part of the
16 transaction, or was it just the custodial part?
17     A.  I know they do the custodial part, and
18 I know that the executions are done in my
19 statement, and my account number has not changed
20 even though three different entities have owned
21 the account.
22     Q.  And can you compare what I'm going to
23 call the -- is it EFG?
24     A.  Yes.
25     Q.  -- EFG/Bear Stearns account to the RCM

TSG Reporting - Worldwide    212-702-9580

Page 156

CONFIDENTIAL - Balzaretti

2  account in terms of the types of activity that
3  the accounts we've discussed today transacted?
4      A.  To me, they're one and the same.
5      Q.  And when you say "one and the same,"
6  why do you say that?
7      A.  I can execute transactions identical
8  in one account or the other.
9      Q.  And was there any significant
10 differences that you can identify in how those
11 transactions were executed?
12     A.  How were they reported or executed?
13     Q.  Executed.
14     A.  None that I know of.
15     Q.  In the way that they were reported?
16     A.  None that I know of.
17     Q.  Whether it was Bear Stearns or Refco,
18 who was the owner of the positions within an
19 account?
20     MS. CLEGHORN: Objection.
21     Q.  You can answer.
22     A.  The account holder.
23     Q.  Who bore the risk, as you understood
24 it?
25     MS. CLEGHORN: Objection.

TSG Reporting - Worldwide    212-702-9580

Page 157

CONFIDENTIAL - Balzaretti

2      Q.  Whether it was in Bear Stearns or RCM?
3      A.  Market risk?
4      Q.  Market risk.
5      A.  The account holder.
6      Q.  Was there, in your mind, a custodial
7  risk?
8      A.  None.
9      Q.  When we spoke about insurance just
10 before, what did that insurance cover, do you
11 have an understanding? What circumstances would
12 that insurance come into effect?
13     A.  My limited understanding is that it
14 would cover in the event that the securities
15 were not in your account.
16     Q.  Was that a concern for you with regard
17 to Refco?
18     A.  When I learned that it was a New
19 York-based entity, no, it didn't become a
20 concern.
21     Q.  Did you ever meet with any New
22 York-based Refco personnel?
23     A.  Refco personnel from New York, Refco
24 Securities persons from New York traveled to
25 Guatemala to offer services to our clients and

TSG Reporting - Worldwide    212-702-9580

Page 158

1  CONFIDENTIAL - Balzaretti
2  to me as a client.
3  Q. And you testified earlier that Refco
4  personnel from Miami also traveled to Guatemala?
5  A. Often, yes.
6  Q. Did anyone else from any other Refco
7  office come to Guatemala?
8  A. If they did, they did not come to
9  visit me.
10  MR. GLICK: I have nothing else.
11  FURTHER EXAMINATION BY
12  MS. CLEGHORN:
13  Q. Just to follow up, why was RCM -- or,
14  strike that. Why was Refco's presence in New
15  York relevant?
16  A. It was our understanding that it was
17  all managed in New York, and given that it's a
18  U.S. territory, we felt comfortable with that.
19  MS. CLEGHORN: I think we have nothing
20  further.
21  MR. GLICK: Thank you.
22  MS. CLEGHORN: And thank you kindly
23  for your long trip.
24  THE WITNESS: Thank you.
25  THE VIDEOGRAPHER: The time is 2:2 --

TSG Reporting - Worldwide    212-702-9580

Page 159

1  CONFIDENTIAL - Balzaretti
2  excuse me, 2:40. We are going off the
3  record.

_____
FERNANDO BALZARETTI

Subscribed and sworn to
before me this    day
of        2005.

_____

TSG Reporting - Worldwide    212-702-9580

Page 160

1  CONFIDENTIAL - Balzaretti
2
3  CERTIFICATE
4
STATE OF NEW YORK )
        : ss
COUNTY OF NEW YORK)

7  I, Kathy S. Klepfer, a Registered
8  Merit Reporter and Notary Public within and
9  for the State of New York, do hereby
10  certify:
11  That FERNANDO BALZARETTI, the witness
12  whose deposition is herein before set forth,
13  was duly sworn by me and that such
14  deposition is a true record of the testimony
15  given by such witness.
16  I further certify that I am not
17  related to any of the parties to this action
18  by blood or marriage and that I am in no way
19  interested in the outcome of this matter.
20  In witness whereof, I have hereunto
21  set my hand this 8th day of February, 2006.

-----------------------
KATHY S. KLEPFER, RPR, RMR, CRR

TSG Reporting - Worldwide    212-702-9580

Page 161

1  CONFIDENTIAL - Balzaretti
2
3  INDEX
4  TESTIMONY OF F. BALZARETTI:    PAGE
5  Examination by Ms. Davidson         6
6  Examination by Ms. Cleghorn    151, 158
7  Examination by Mr. Glick          154

9  EXHIBITS:                PAGE
10  Exhibit 300, a document bearing Bates Nos.    36
11  RCM AOD 012679 through 672
12  Exhibit 301, a document bearing Bates Nos.    39
13  RCM AOD 012678 through 012681
14  Exhibit 302, a document bearing Bates Nos.    50
15  RCM AOD 012722 through 726
16  Exhibit 303, a document bearing Bates Nos.    56
17  RCM AOD 012673 through 2677
18  Exhibit 304, a document bearing Bates Nos.    61
19  IDC 0010 through 0013
20  Exhibit 305, a document bearing Bates Nos.    126
21  RCMS-DTC000289 through 291
22  Exhibit 306, Explanation of Coded Symbols    129

TSG Reporting - Worldwide    212-702-9580