Scott A. Edelman (SE 5247)
Sander Bak (SB 2263)
Michael Shepherd (MS 1313)
**MILBANK, TWEED, HADLEY & McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re REFCO CAPITAL MARKETS, LTD. BROKERAGE CUSTOMER SECURITIES LITIGATION | 06 Civ. 643 (GEL) |
| VR GLOBAL PARTNERS, L.P., et al., Plaintiffs,<br>- against -<br>PHILLIP R. BENNETT, et al., Defendants. | 07 Civ. 8686 (GEL) |
| CAPITAL MANAGEMENT SELECT FUND LTD., et al., Plaintiffs,<br>- against -<br>PHILLIP R. BENNETT, et al., Defendants. | 07 Civ. 8688 (GEL) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RICHARD N. OUTRIDGE'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 2

I. APPLICABLE LEGAL STANDARDS ........ 2

II. THE COMPLAINTS ALLEGE RCM'S DECEPTIVE CONDUCT ........ 2

III. IN ADDITION TO PLEADING AFFIRMATIVE DECEPTION, THE COMPLAINTS ALLEGE A SECURITIES FRAUD CLAIM BASED ON RCM'S BREACH OF ITS FIDUCIARY DUTY TO ITS CUSTOMERS ........ 3

IV. PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS ........ 3

V. THE COMPLAINTS PLEAD STRONG CIRCUMSTANTIAL EVIDENCE OF OUTRIDGE'S CONSCIOUS MISBEHAVIOR OR RECKLESSNESS ........ 3

A. OUTRIDGE'S INVOLVEMENT IN AND CONTROL OVER RCM'S INTERNAL OPERATIONS GIVE RISE TO A STRONG INFERENCE OF SCIENTER ........ 4

B. THE MAGNITUDE, SCOPE, AND FINANCIAL SIGNIFICANCE OF THE SCHEME GIVE RISE TO THE REQUISITE STRONG INFERENCE ........ 6

VI. THE COMPLAINTS ADEQUATELY PLEAD PRIMARY LIABILITY ON THE PART OF OUTRIDGE ........ 9

VII. THE COMPLAINTS PLEAD ACTIONABLE CONTROL PERSON LIABILITY CLAIMS AGAINST OUTRIDGE ........ 10

VIII. THE COMPLAINTS ADEQUATELY PLEAD A RULE 10B-16 VIOLATION ........ 11

IX. LEAVE TO REPLEAD SHOULD BE GRANTED IF ANY PLEADINGS ARE FOUND TO BE INSUFFICIENT ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
512 F.3d 46 (1st Cir. 2008) .......... 9

*Adams v. Amplidyne, Inc.*,
No. Civ. A. 99-4468 (MLC), 2000 WL 34603180 (D.N.J. Oct. 24, 2000) .......... 7

*Bell Atl. v. Twombly*,
127 S. Ct. 1955 (2007) .......... 11

*Berson v. Applied Signal Tech., Inc.*,
527 F. 3d 982 (9th Cir. (Cal.), Jun 05, 2008) .......... 8

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989) .......... 7

*Epstein v. Itron, Inc.*,
993 F. Supp. 1314 (E.D. Wash. 1998) .......... 7

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......... 10

*In re Blech Sec. Litig.*,
No. 94 Civ. 7696 (RWS), 2002 WL 31356498 (S.D.N.Y. Oct. 17, 2002) .......... 9

*In re Cell Pathways Sec. Litig.*,
No. 99-725, 2000 WL 805221 (E.D. Pa. June 20, 2000) .......... 7

*In re Converium Holding AG Sec. Litig.*,
04 Civ. 7897 (DLC), 2007 WL 2684069 (S.D.N.Y. Sept. 14, 2007) .......... 9

*In re Global Crossing, Ltd. Sec. Litig.*,
471 F. Supp. 2d 338 (S.D.N.Y., Jun 13, 2006) .......... 11

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) .......... 8

*In re JP Morgan Chase Sec. Litig.*,
363 F.Supp. 2d 595 (S.D.N.Y. 2005) .......... 5

*In re Leslie Fay Cos. Inc. Sec. Litig.*,
871 F. Supp. 686 (S.D.N.Y. 1995) .......... 8

*In re Livent, Inc. Sec. Litig.*,
148 F. Supp. 2d 331 (S.D.N.Y. 2001) .......... 8

*In re Philip Servs. Corp. Sec. Litig.*,
383 F. Supp. 2d 463 (S.D.N.Y. 2004) .......... 8

*In re Refco, Inc. Sec. Litig.*,
503 F.Supp. 2d 611 (S.D.N.Y. 2007) .......... 3

*In re Retek Inc. Sec. Litig.*,
Civ. No. 02-4209 (JRT/SRN), 2007 WL 14352 (D. Minn. Jan. 3, 2007)..................... 10

*In re Sears, Roebuck & Co. Sec. Litig.*,
291 F. Supp. 2d 722 (N.D. Ill. 2003) ............................................................................ 7

*In re Tel-Save Sec. Litig.*,
No. 98-CV-3145, 1999 WL 999427 (E.D. Pa. Oct. 19, 1999) ...................................... 7

*In re Tower Auto. Sec. Litig.*,
05 Civ. 1926 (RWS), 535 F. Supp. 2d 445 (S.D.N.Y. 2008) ........................................ 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F. Supp. 2d 158 (S.D.N.Y. 2003)......................................................................... 10

*Lindelow v. Hill*,
No. 00 C 3727, 2001 WL 830956 (N.D. Ill. July 20, 2001) .......................................... 7

*Mississippi Pub. Employees' Ret. Sys. v. Boston Scientific, Corp.*,
No. 07-1794, 2008 WL 1735390 (1st Cir. April 16, 2008) ........................................... 9

*Montoya v. Mamma. Com Inc.*,
No. 05 Civ. 2313 (HB), 2006 WL 770573 (S.D.N.Y. Mar. 28, 2006) ......................... 11

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ........................................................................................ 7

*OSRecovery, Inc. v. One Groupe Intern., Inc.*,
354 F.Supp. 2d 357 (S.D.N.Y. 2005)............................................................................ 6

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996)........................................................................................ 9

*SEC v. Zandford*,
535 U.S. 813 (2002)...................................................................................................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007)................................................................................................... 8

**OTHER AUTHORITIES**

*United States of America v. Phillip R.*
*Bennett, Robert C. Trosten, Tone N. Grant*, S3 05 Cr. 1192 (NRB) ............................. 5

**RULES**

17 C.F.R. § 240.10b ........................................................................................................ 10

17 C.F.R. § 240.10b-16.................................................................................................... 11

17 C.F.R. § 240.10b-5...................................................................................................... 10

Fed. R. Civ. P. 8(a) .......................................................................................................... 11

Plaintiffs in *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, 06 Civ. 643 (the "Class Action")[1], *VR Global Partners, et al. v. Phillip R. Bennett, et al.*, No. 07 Civ. 8686 (the "VR Action")[2], and *Capital Management Select Fund Ltd., et al. v. Phillip R. Bennett, et al.*, No. 07 Civ. 8688 (the "Capital Management Action")[3] (together "Plaintiffs") respectfully submit this memorandum of law in opposition to defendant Richard N. Outridge's motion to dismiss the complaints filed in the aforementioned actions ("the Complaints").

**PRELIMINARY STATEMENT**

The majority of Outridge's arguments have been addressed at length in Plaintiffs' Memorandum of Law in Opposition to Motions to Dismiss (the "Opposition Brief") dated April 28, 2008, and Plaintiffs' Sur-Reply Memorandum of Law (the "Sur-Reply Brief") dated June 27, 2008. Plaintiffs adopt their responsive arguments in the Opposition Brief and Sur-Reply Brief and will not repeat them here.

The only new argument offered by Outridge is that the Complaints fail to allege his role in the RCM Securities Fraud.[4] In fact, however, the Complaints allege that Outridge not only knew all relevant details of the RCM Securities Fraud but played a central role in its perpetration. The Complaints allege that in his capacity as Vice President, Controller, and Chief Financial Officer of RCM from June 2001 through August 2005, Outridge was directly responsible for RCM's financial affairs, including

---

[1] Lead Plaintiffs Global Management Worldwide Ltd., Arbat Equity Arbitrage Fund Ltd., and Russian Investors Securities Ltd (the "Class Action Plaintiffs").

[2] Plaintiffs VR Global Partners, L.P., Paton Holdings Ltd., VR Capital Group Ltd., and VR Argentina Recovery Fund, Ltd. (the "VR Plaintiffs").

[3] Plaintiffs Capital Management Select Fund Ltd., Investment & Development Finance Corporation, and IDC Financial S.A. (the "Capital Management Plaintiffs").

[4] The term RCM Securities Fraud is defined in Opposition Brief at p. 2.

RCM's adoption of, and compliance with, appropriate accounting policies, RCM's maintenance of adequate internal financial controls, and the preparation of RCM's audited financial statements.[5] Outridge's role within RCM, and his detailed knowledge of RCM's financial practices, placed him in a position to direct, implement, and oversee the massive transfers from RCM to other Refco entities of the proceeds of the unauthorized conversion of customer securities.[6] In light of the allegations regarding the breadth of the scheme, involving the fraudulent transfer of hundreds of millions of dollars daily from customer accounts at RCM, it defies logic for the CFO of RCM to dispute that his knowledge of, and participation in, the scheme has been adequately alleged.

## STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to the Statement of Facts (pp. 9-17) in the Opposition Brief.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

Plaintiffs respectfully refer the Court to the applicable legal standards discussed in Section I (pp. 17-19) of the Opposition Brief.

### II. THE COMPLAINTS ALLEGE RCM'S DECEPTIVE CONDUCT

Plaintiffs respectfully refer the Court to Section II (pp. 20-37) of the Opposition Brief, demonstrating at least six independent ways in which the Complaints allege that RCM's conduct was deceptive.

---

[5] Class Action Compl. ¶¶ 53, 180; Capital Management Compl. ¶¶50, 181; VR Compl. ¶¶ 68, 263.
[6] *Id.*

## III. IN ADDITION TO PLEADING AFFIRMATIVE DECEPTION, THE COMPLAINTS ALLEGE A SECURITIES FRAUD CLAIM BASED ON RCM'S BREACH OF ITS FIDUCIARY DUTY TO ITS CUSTOMERS

Plaintiffs respectfully refer the Court to Section III (pp. 37-42) of the Opposition Brief, showing that RCM owed Plaintiffs fiduciary duties with respect to the custody of their fully-paid securities and, as a result, RCM breached its fiduciary duty by failing to disclose to its customers that it was taking and using their securities.

## IV. PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS

Plaintiffs respectfully refer the Court to Section IV (pp. 42-49) of the Opposition Brief, where Plaintiffs demonstrate that they have standing under Section 10(b) because the Second Circuit held that the purchaser-seller rule does not bar claims where, as here, a plaintiff suffers losses as a result of the unauthorized trading of its property. Plaintiffs' standing is also established by the Supreme Court's holding in *SEC v. Zandford*, 535 U.S. 813 (2002).[7]

## V. THE COMPLAINTS PLEAD STRONG CIRCUMSTANTIAL EVIDENCE OF OUTRIDGE'S CONSCIOUS MISBEHAVIOR OR RECKLESSNESS[8]

The Complaints allege that Outridge was among a small group of Officer Defendants,[9] the senior executives who conducted and oversaw the day-to-day

---

[7] Plaintiffs respectfully refer the Court to the discussion of *Zandford* and its subsequent application in various private actions set forth in Section IV (pp. 44-47) of the Opposition Brief.

[8] Plaintiffs respectfully refer the Court to the applicable legal standards set forth in Section V.A. of the Opposition Brief.

[9] As this Court made clear in *In re Refco, Inc. Sec. Litig.*, the group pleading doctrine may be used to plead scienter. 503 F.Supp. 2d 611, 641 (S.D.N.Y. 2007). Group pleading is appropriate where the complaint contains allegations of each individual's "direct involvement in the company's everyday business." *Id.* The Complaints allege that Outridge was part of a small group of senior executives who conducted and oversaw the day-to-day operations of Refco. Class Action Compl. ¶¶ 48, 169-70; Capital Management Compl. ¶¶ 43, 171-72; VR Compl. ¶¶ 60, 253-54. *See In re Refco Sec. Litig.*, 503 F.Supp. 2d at 641 (finding group pleading requirements satisfied where there are allegations that each

management and operations of Refco.[10] Plaintiffs allege that through his knowledge and control of Refco's internal operations, Outridge perpetrated the fraudulent and deceptive conversion of RCM customer securities and had access to information demonstrating that Refco's public statements and representations to Plaintiffs were false and misleading.[11] As alleged in the Complaints, by virtue of his direct responsibility for the financial affairs of RCM, including directing and implementing the transfers of stolen customer funds to other Refco entities, Outridge played an active and vital role in the fraud.[12]

### A. OUTRIDGE'S INVOLVEMENT IN AND CONTROL OVER RCM'S INTERNAL OPERATIONS GIVE RISE TO A STRONG INFERENCE OF SCIENTER

The Complaints allege that Outridge joined Refco in June, 2001, as Vice President and Controller of RCM, and served as Chief Financial Officer of RCM from early 2004 until August 10, 2005.[13] Plaintiffs allege that, as CFO of RCM, Outridge was primarily responsible for RCM's financial affairs, including ensuring that RCM adopted and complied with appropriate accounting policies and maintained adequate internal financial controls.[14] As alleged in the Complaints, in his role as CFO of RCM, Outridge presented details of RCM's finances to members of the Audit Committee.[15] Plaintiffs

---

defendant "was a corporate insider or affiliate with direct involvement in the daily affairs of the company"). The Complaints contain detailed and particularized allegations regarding Outridge, as well as group allegations against the Officer Defendants, that establish scienter by showing Outridge's conscious misbehavior and recklessness in directing and implementing the fraudulent scheme.

[10] Class Action Compl. ¶¶ 48, 169-70; Capital Management Compl. ¶¶ 43, 171-72; VR Compl. ¶¶ 60, 253-54.

[11] *Id.*

[12] Class Action Compl. ¶¶ 53, 180; Capital Management Compl. ¶¶50, 181; VR Compl. ¶¶ 68, 263.

[13] Class Action Compl. ¶¶ 53, 180; Capital Management Compl. ¶¶50, 181; VR Compl. ¶¶ 68, 263.

[14] *Id.*

[15] *Id.*

also allege that throughout his time at Refco, Outridge was involved in the preparation of RCM's Financial Statements, which concealed the transactions that constituted both the RCM Securities Fraud and the RGHI Fraud.[16] [17] The Complaints further allege that as a result of his knowledge of RCM's finances and his obligation as CFO to monitor RCM's financial status, Outridge knew details of the fraud at Refco, including knowledge of that part of the RGHI Receivable housed at RCM and the substantial cash and book transfers that were made in and out of RCM pursuant to the RGHI Fraud.[18] Outridge's involvement in the various frauds, including his knowledge of the round-trip loans related to the RGHI Scheme, is confirmed by Grant Thornton's audit workpapers and related notes.[19] In addition, Outridge was identified by the Government as an unindicted coconspirator of Phillip R. Bennett, Robert C. Trosten and Tone N. Grant in regard to the criminal charges brought against them resulting from the fraud at Refco.[20]

Outridge's primary argument against liability appears to be that the fraudulent scheme was "well underway before [he] joined RCM" in June 2001. (Outridge Mem. at 21; *see also* Outridge Mem. at 10, 13, 15, 22.) But the Complaints do not allege that Outridge conceived the scheme, but that he fraudulently perpetuated it, and numerous cases support liability against someone who joined a securities fraud already in progress. *See, e.g., In re JP Morgan Chase Sec. Litig.*, 363 F.Supp. 2d 595, 602

---

[16] The term RGHI Fraud is defined in Opposition Brief at p. 7.

[17] VR Compl. ¶¶ 180-235

[18] *Id.*

[19] *Id.*

[20] *See* Government's List of Coconspirators, dated February 7, 2008, filed in *United States of America v. Phillip R. Bennett, Robert C. Trosten, Tone N. Grant*, S3 05 Cr. 1192 (NRB), attached as Ex. A. to the Bak Decl. submitted with the Opposition Brief, filed April 28, 2008, *see* case number 1:07-cv-08686, electronic court filing document number 53.

(S.D.N.Y. 2005) (liability can attach to a party who participates in a fraudulent scheme conceived by another); *OSRecovery, Inc. v. One Groupe Intern., Inc.*, 354 F.Supp. 2d 357, 375 (S.D.N.Y. 2005) (a defendant can be liable for "perpetuat[ing] old schemes"). Indeed, although the scheme was conceived prior to Outridge's arrival at RCM, during the period Outridge directed and controlled RCM's financial affairs not only did the fraudulent scheme continue but it increased in size.[21]

**B. THE MAGNITUDE, SCOPE, AND FINANCIAL SIGNIFICANCE OF THE SCHEME GIVE RISE TO THE REQUISITE STRONG INFERENCE**

As discussed in Section V.B.1.b. of the Opposition Brief (pp. 56-50), the inference of scienter here is particularly strong because of the Complaints' allegations regarding the magnitude, scope and financial significance of the scheme to Refco.[22] Plaintiffs allege that the unauthorized sale of customer securities and transfer of the proceeds to other Refco entities "was accepted as a regular business practice within Refco" and was "approved and executed by senior management of Refco, and was known to the THL Defendants and each of the Officer Defendants or, at a minimum, was recklessly disregarded by them."[23]

As of October 2005, RCM had more than $2.4 billion of outstanding, undisclosed and uncollectible intercompany receivables funded by the fraudulent conversion of entrusted customer securities.[24] The fact that the fraudulent scheme involved a core component of RCM's business supports a strong inference that Outridge,

---

[21] Class Action Compl. ¶ 19; Capital Management Compl. ¶ 16; VR Compl. ¶ 17.

[22] Class Action Compl. ¶ 16; Capital Management Compl. ¶ 14; VR Compl. ¶ 15.

[23] Class Action Compl. ¶ 119; Capital Management Compl. ¶ 115; VR Compl. ¶ 124.

[24] *Id.*

who as CFO of RCM was directly responsible for RCM's finances, knew or was reckless in not knowing about the fraud.  Where matters are so important that they go to the very "core" of a company's business, courts readily accept the inference that the company's top officers, directors, and large shareholders were or should have been aware of them. *See Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (directors are imputed with knowledge of the removal of a "potentially significant source of income for the company"); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 943 (9th Cir. 2003) (company's largest corporate investor deemed to have knowledge of company's maintenance problems and communications with the government because their officers "served as members of America West's Board of Directors").[25]

Likewise, the "sheer magnitude" of the scheme, which involved transfers from RCM of up to "hundreds of millions of dollars each day," such that "the amounts stolen in RCM customer assets substantially outsized Refco's total capital" creates a strong inference that Outridge knew, or was reckless in not knowing, about the fraud.[26]

---

[25] *See also In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003) (officers of a company can be assumed to know of facts "critical to a business's core operations or to an important transaction that would affect a company's performance.") (quotations omitted); *Lindelow v. Hill*, No. 00 C 3727, 2001 WL 830956, at *8 (N.D. Ill. July 20, 2001) (where misrepresentations "concern matters fundamental" to the company, there is a strong inference that "every officer or director" knew of falsity or acted with reckless disregard); *In re Cell Pathways Sec. Litig.*, No. 99-725, 2000 WL 805221, at *7 (E.D. Pa. June 20, 2000) ("[W]here the alleged fraud relates to the core business of the company, knowledge of the fraud may be imputed to the individual defendants."); *Adams v. Amplidyne, Inc.*, No. Civ. A. 99-4468 (MLC), 2000 WL 34603180, at *7 (D.N.J. Oct. 24, 2000) (strong inference that officers and directors have knowledge of "core business" matters); *Epstein v. Itron, Inc.*, 993 F. Supp. 1314, 1326 (E.D. Wash. 1998) ("[F]acts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers."); *In re Tel-Save Sec. Litig.*, No. 98-CV-3145, 1999 WL 999427, at *5 (E.D. Pa. Oct. 19, 1999) ("Knowledge concerning a company's key businesses or transactions may be attributable to the company, its officers and directors.").

[26] Class Action Compl. ¶ 162; Capital Management Compl. ¶ 165; VR Compl. ¶ 247.

*See In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 475 (S.D.N.Y. 2004) ("The enormity of the fraud attributed to Philip makes this finding [of scienter] particularly appropriate."); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 347 (S.D.N.Y. 2004) ("the scope of the fraud alleged may appropriately be considered in determining whether scienter has been adequately pled."); *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 367 (S.D.N.Y. 2001) ("[T]he magnitude of the alleged fraud is properly considered in weighing whether a complaint meets the pleading standard for scienter."); *Berson v. Applied Signal Tech., Inc.*, 527 F. 3d 982 at 989 (9th Cir. (Cal.), Jun 05, 2008) (sufficient inference of scienter where complaint alleged significant transfer of funds such "that it would be 'absurd to suggest' that top management was unaware" of the fraud).[27]

Given the size of the transfers from RCM to the other Refco entities, the extent to which those transfers were essential to those entities' continued operation, and Outridge's high-level role at RCM, it is inconceivable that he could have been unaware of the fraud by which RCM was raising such funds. At a minimum, the inference of Outridge's scienter is at least as strong as any competing inference and therefore the Complaints should be sustained. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2511 (2007) (complaint should not be dismissed at the pleadings stage if based

---

[27] Class Action Compl. ¶¶ 53, 180; Capital Management Compl. ¶¶50, 181; VR Compl. ¶¶ 68, 263. *See also In re Leslie Fay Cos. Inc. Sec. Litig.*, 871 F. Supp. 686 (S.D.N.Y. 1995) (defendants purported failure to discover inventory fraud of over $50 million indicates, at a minimum, a degree of recklessness from which intent may be inferred).

on all the allegations "a reasonable person [would] deem the inference of scienter…at least as compelling as any…opposing inference").[28]

## VI. THE COMPLAINTS ADEQUATELY PLEAD PRIMARY LIABILITY ON THE PART OF OUTRIDGE

As discussed in Section VI of the Opposition Brief (pp. 76-85), in cases alleging a fraudulent scheme, Section 10(b) liability attaches to persons who had knowledge of the fraud and assisted in its perpetration. The Complaints adequately allege Outridge's primary liability, as well as his control person liability (*see infra* at Section VII), based on his knowledge of the fraud and his central role in its perpetration. *See SEC v. First Jersey Sec., Inc*., 101 F.3d 1450, 1467, 1471 (2d Cir. 1996) (primary liability as to a scheme under Section 10(b) requires pleading that defendant "had knowledge of the fraud" and "assisted in its perpetration"); *see also In re Blech Sec. Litig*., No. 94 Civ. 7696 (RWS), 2002 WL 31356498, at *4 (S.D.N.Y. Oct. 17, 2002) (primary liability adequately alleged where defendant "directed" or "contrived" allegedly fraudulent trades).

As discussed above, the Complaints allege that as CFO of RCM, Outridge was aware that securities were deceptively taken from RCM's customers' accounts and then he directed the upstreaming, sidestreaming, and downstreaming of the proceeds of

---

[28] *See, e.g., In re Converium Holding AG Sec. Litig.*, 04 Civ. 7897 (DLC), 2007 WL 2684069, at 2 (S.D.N.Y. Sept. 14, 2007) (denying motion to dismiss because the inference of scienter raised by plaintiffs was "at least as compelling" as any opposing inference one could draw from the facts alleged); *In re Tower Auto. Sec. Litig*., 05 Civ. 1926 (RWS), 535 F. Supp. 2d 445, (S.D.N.Y. 2008) (denying motion to dismiss because an "inference of fraudulent intent at least as compelling as any opposing non-fraudulent inference" was established); *see also ACA Fin. Guar. Corp. v. Advest, Inc*., 512 F.3d 46, 59 (1st Cir. 2008) (noting that "where there are equally strong inferences for and against scienter, *Tellabs* now awards the draw to the plaintiff"); *Mississippi Pub. Employees' Ret. Sys. v. Boston Scientific, Corp*., No. 07-1794, 2008 WL 1735390 (1st Cir. April 16, 2008) (applying *Tellabs* and reversing district court's dismissal of complaint because "plaintiff's inferences are at least equally strong").

these sales to other Refco entities.[29] Those pleadings are more than sufficient to support a Rule 10b-5 violation. *See In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 191 (S.D.N.Y. 2003) ("a member of the upper level management, such as the CEO or CFO, who had knowledge of the fraud, and assisted in its perpetration by failing to disclose or correct the fraud when he had a duty to do so, may be held liable under Section 10(b) and Rule 10b-5"); *In re Retek Inc. Sec. Litig.*, Civ. No. 02-4209 (JRT/SRN), 2007 WL 14352, at *7 (D. Minn. Jan. 3, 2007) (sustaining Rule 10b-5 claims against several corporate officers because "[p]laintiffs' allegations place these executive officers at the center of the alleged scheme to defraud, which if proven true could show the officers assisted in the perpetration of fraud").

## VII. THE COMPLAINTS PLEAD ACTIONABLE CONTROL PERSON LIABILITY CLAIMS AGAINST OUTRIDGE

For the reasons discussed in Section VII of the Opposition Brief (pp. 86-93), Plaintiffs adequately plead claims for control person liability against Outridge.

First, as addressed in Sections I-VI of the Opposition Brief (pp. 17-85), the Complaints adequately plead primary violations on the part of Refco, RCM, and RSL.

Second, the Complaints allege that Outridge had the power to control Refco and RCM by virtue of his positions as CFO, Vice President, and Controller of RCM, the key roles he played in Refco's management, and his direct involvement in its day-to-day operations, including its finance and accounting functions. *See supra* at Sections V-VI (outlining the role of Outridge). Those allegations are sufficient to plead control. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 488 n.51 (S.D.N.Y. 2005)

---

[29] Class Action Compl. ¶ 110; Capital Management Compl. ¶ 113; VR Compl. ¶ 122.

("Corporate officers are usually presumed to possess the requisite power to control the actions of their employees and are often held accountable as controlling persons."). At a minimum, because the control allegations are governed by Rule 8(a)'s lenient pleadings standard, dismissal is improper because "it is at least plausible that plaintiff could develop some set of facts that would pass muster." *In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338 at 352 (S.D.N.Y., Jun 13, 2006), quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct., 1955, 1964-67 (2007).

Finally, the same allegations discussed in Section V that raise a strong inference of scienter on the part of Outridge necessarily gives rise to a strong inference that he was a culpable participant in the fraud. *See Montoya v. Mamma. Com Inc*., No. 05 Civ. 2313 (HB), 2006 WL 770573, at *9 (S.D.N.Y. Mar. 28, 2006) ("[S]ince I have already determined that plaintiffs adequately alleged that [defendants] acted with scienter, the 'culpable participation' requirement is met").

## VIII. THE COMPLAINTS ADEQUATELY PLEAD A RULE 10B-16 VIOLATION

Plaintiffs respectfully refer the Court to Section VIII (pp. 94-100) of the Opposition Brief, demonstrating that the Complaints adequately plead a Rule 10b-16 violation against Outridge.

## IX. LEAVE TO REPLEAD SHOULD BE GRANTED IF ANY PLEADINGS ARE FOUND TO BE INSUFFICIENT

Plaintiffs respectfully refer the Court to Section X (pp. 123-125) of the Opposition Brief and request leave to replead in the event that any of the allegations against Outridge be found to be deficient as pleaded.

**CONCLUSION**

For the reasons discussed herein and in the Opposition Brief, defendant Outridge's motion to dismiss should be denied and the Plaintiffs in the Class Action, Capital Management and VR Complaints should be permitted to proceed to discovery on their claims against defendant Outridge.

Dated: New York, NY
July 25, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

/s/ Scott A. Edelman

Scott A. Edelman (SE 5247)
Sander Bak (SB 2263)
Michael Shepherd (MS 1313)
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
sbak@milbank.com
*Counsel for the Capital Management and VR Plaintiffs*; *Proposed Co-Lead Counsel for Lead Plaintiffs and the Putative Class*

KIRBY McINERNEY & SQUIRE, LLP

/s/ Mark A. Strauss

Richard L. Stone (RS 5324)
Mark A. Strauss (MS 2288)
830 Third Avenue
New York, NY 10022
Tel.: (212) 371-6600
Fax: (212) 751-2540
mstrauss@kmllp.com
*Co-Lead Counsel for Lead Plaintiffs and the Putative Class*