Claire P. Gutekunst
Jessica Mastrogiovanni
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212)969-3000
cgutekunst@proskauer.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VR GLOBAL PARTNERS, L.P., et al.,<br><br>       Plaintiffs,<br><br>vs.<br><br>PHILLIP R. BENNETT, et al.,<br><br>       Defendants. | 07 Civ. 8686 (GEL) |
| CAPITAL MANAGEMENT SELECT FUND LTD., et al.,<br><br>       Plaintiffs,<br><br>vs.<br><br>PHILLIP R. BENNETT, et al.,<br><br>       Defendants. | 07 Civ. 8688 (GEL) |
| In re REFCO CAPITAL MARKETS, LTD. BROKERAGE CUSTOMER SECURITIES LITIGATION | 06 Civ. 643 (GEL) |

**DEFENDANT RICHARD N. OUTRIDGE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

POINT I   COUNT I FAILS TO STATE A CLAIM AGAINST MR. OUTRIDGE UNDER SECTION 10(B) OR RULE 10(B)-5 OF THE EXCHANGE ACT ............. 2

    A.    Plaintiffs Fail To Allege that Mr. Outridge Engaged in any Conduct Prohibited under Rule 10b-5(a) or (c) ............................................................. 2

        1.    Plaintiffs Fail To Allege that Mr. Outridge Committed a Manipulative or Deceptive Act on which Plaintiffs Relied ................................... 2

        2.    Plaintiffs Have not Identified any Alleged Facts that Mr. Outridge Was an Active Participant in the Alleged Schemes ................................. 5

    B.    Plaintiffs also Have Failed To Plead Scienter as to Mr. Outridge ...................... 7

        1.    The Allegations Concerning Mr. Outridge's Position, Involvement and Control over RCM's Internal Operations Do Not Give Rise to a Strong Inference of Scienter ....................................................................... 8

        2.    The Alleged Magnitude of the Alleged Schemes Fails To Give Rise to a Strong Inference of Scienter on Behalf of Mr. Outridge .............................. 9

POINT II   PLAINTIFFS HAVE NOT PLED A RULE 10B-16 CLAIM AGAINST MR. OUTRIDGE .......................................................................................... 11

POINT III  PLAINTIFFS FAIL TO STATE A CONTROL PERSON LIABILITY CLAIM UNDER SECTION 20(A) OF THE EXCHANGE ACT AS TO MR. OUTRIDGE .......................................................................................... 11

    A.    The Complaints Do Not Allege that Mr. Outridge Exercised the Control Required To State a Section 20(A) Violation against Him ................. 11

    B.    Plaintiffs Also Fail To Adequately Plead Culpable Participation by Mr. Outridge .................................................................................................... 13

POINT IV  PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD SHOULD BE DENIED AS TO MR. OUTRIDGE ........................................................................ 14

CONCLUSION ........................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**CASES**

*Am. Fin. Int'l Group–Asia, LLC v. Bennett*,
  2007 WL 1732427 (S.D.N.Y. June 14, 2007) (Lynch, J.)......................................................8

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir. 1994) ................................................................................................4

*Butvin v. DoubleClick, Inc.*,
  2000 WL 827673 (S.D.N.Y. June 26, 2000) ......................................................................6

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................................2

*In re AOL Time Warner Sec. & "ERISA" Litig.*,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004) ................................................................................8

*In re BISYS Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) ................................................................................9

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004), aff'd sub
  nom. *Albert Fadem Trust v. Citigroup Inc.*,
  165 Fed. Appx. 928 (2nd Cir. 2006)..................................................................................9

*In re Livent, Sec. Litig.*,
  148 F. Supp. 2d 331 (S.D.N.Y. 2001) ..............................................................................10

*In re Parmalat Sec. Litig.*,
  2008 WL 3275643 (S.D.N.Y. Aug. 7, 2008)......................................................................2

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 472 (S.D.N.Y. 2005) ................................................................................4

*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*,
  2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007)............................................................3-5, 11

*In re WorldCom, Inc. Sec. Litig.*,
  2003 WL 21488087 (S.D.N.Y. June 25, 2003) ..............................................................9-10

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ..............................................................................................7

*Kinsey v. Cendant Corp.*,
  2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005)....................................................................8

*Ravens v. Republic N.Y. Corp.*,
  2002 WL 1969651 (E.D. Pa. April 24, 2002)....................................................................4

*Rich v. Maidstone Fin., Inc.*,
  2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ......................................................................2

*Ross v. A.H. Robins Co.*,
  607 F.2d 545 (2d Cir. 1979) ................................................................................................ 8-9

*SEC v. First Jersey Sec. Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ................................................................................................4

*Shapiro v. Cantor*,
  123 F.3d 717 (2d Cir. 1997) ..................................................................................................4

*Steed Fin. LDC v. Laser Advisers, Inc.*,
  258 F. Supp. 2d 272 (S.D.N.Y. 2003) ...................................................................................8

*Stoneridge Inv. Partners, LLC v. Scientific-Atlantic, Inc.*,
  128 S. Ct. 761 (2008) .........................................................................................................2, 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007) ..................................................................................................... 7, 10

*United States v. Finnerty*,
  533 F.3d 143 (2d Cir. 2008) ............................................................................................. 2-4

*United States v. Hayward*,
  2008 WL 2926828 (2d Cir. July 30, 2008) ..........................................................................2

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) ..............................................................................................4, 6

**STATUTES AND RULES**

17 C.F.R. 240.10-b ................................................................................................................Passim

17 C.F.R. 240.10b-5 ............................................................................................................1-3, 13

17 C.F.R. 240.10b-5(a) ............................................................................................................2, 5

17 C.F.R. 240.10b-5(b) ................................................................................................................2

17 C.F.R. 240.10b-5(c) ................................................................................................................2

17 C.F.R. 240.10b-16 ............................................................................................................ 1, 11

15 U.S.C. §78t .................................................................................................................. 1, 11-14

Fed. R. Evid. 801(d)(2)(E) .........................................................................................................9

# PRELIMINARY STATEMENT

Plaintiffs' Memorandum of Law in Opposition to Mr. Outridge's Motion To Dismiss ("Pl. Mem.") does not cure (and in fact fails to address most of) the insufficiencies of their allegations as to Mr. Outridge.[1]

- Plaintiffs misstate the elements required to allege primary liability under Rule 10b-5 and ignore the requirement that Mr. Outridge must have committed a deceptive act on which Plaintiffs relied. They fail to cite to any allegation in the Complaints that Mr. Outridge ever dealt with Plaintiffs or any other RCM customer, or that Mr. Outridge made any representation in any communication to RCM customers on which they relied. Rather, Plaintiffs simply refer the Court to RCM's – ***not Mr. Outridge's*** – alleged deceptive acts. (Pl. Mem. at 2)

- Plaintiffs also do not identify any allegations in the Complaints that allege with particularity any act by Mr. Outridge in furtherance of either of the schemes alleged in the Complaints. Only four paragraphs in each Complaint refer specifically to Mr. Outridge, none of which alleges with particularity that Mr. Outridge engaged in any fraudulent conduct.

- Plaintiffs have not provided any authority that Mr. Outridge, an individual who did not deal or associate in any way with RCM's customers, owed Plaintiffs a fiduciary duty. Plaintiffs merely point the Court to their Memorandum of Law in Opposition to the other defendants' motions to dismiss ("Pl. Main Opp."), which outlines RCM's – ***not Mr. Outridge's*** – alleged fiduciary duty to its customers. (Pl. Mem. at 3)

- Plaintiffs also have not met their burden of pleading scienter, as they have not adequately pled facts that create a strong inference of Mr. Outridge's knowledge of the fraudulent scheme that are at least as compelling as the opposing inferences of his non-fraudulent intent.

- Plaintiffs ignore the plain language of Rule 10b-16, which applies only to brokers-dealers. Mr. Outridge was not a broker-dealer and Plaintiffs do not allege that Mr. Outridge had any obligations to make the statutory disclosures to customers or, indeed, that he had any communications with customers whatsoever.

- Plaintiffs' Section 20(a) claim also fails because the Complaints do not adequately allege that Mr. Outridge had actual control over the transactions at issue (i.e., the acceptance of customer funds, the representations made to customers about how Refco would treat those funds and the conversion of customer assets).

---

[1] Unless otherwise indicated, capitalized terms used herein have the meanings ascribed in Mr. Outridge's Memorandum Of Law In Support Of Motion To Dismiss, dated June 18, 2008 ("Outridge Mem."). Mr. Outridge joins in and incorporates by reference those arguments for dismissal applicable to him made by the other defendants in their reply memoranda submitted in further support of their motions to dismiss, which were previously filed with this Court.

# ARGUMENT

## POINT I

### COUNT I FAILS TO STATE A CLAIM AGAINST MR. OUTRIDGE UNDER SECTION 10(B) OR RULE 10(B)-5 OF THE EXCHANGE ACT

**A.   Plaintiffs Fail To Allege that Mr. Outridge Engaged in any Conduct Prohibited under Rule 10b-5(a) or (c)[2]**

**1.   Plaintiffs Fail To Allege that Mr. Outridge Committed a Manipulative or Deceptive Act on which Plaintiffs Relied**

Plaintiffs' claims against Mr. Outridge fail because they have not pleaded a fundamental element of a claim under Section 10(b) and Rule 10b-5 – that he committed a deceptive act on which they relied.[3] *See United States v. Finnerty*, 533 F.3d 143, 148-49 (2d Cir. 2008) (affirming trial court's reversal of jury verdict on Rule 10b-5(a) and (c) claims for failure to establish that Finnerty engaged in a deceptive act on which customers relied, noting that "[t]he government has identified no way in which Finnerty communicated anything to his customers, let alone anything false."); *see also United States v. Hayward*, 2008 WL 2926828, at *1 (2d Cir. July 30, 2008) (reversing defendants' convictions on the ground that there was no proof of any deceptive conduct by the defendants themselves of which the customers were aware); *In re Parmalat Sec. Litig.*, 2008 WL 3275643, at *2 (S.D.N.Y. Aug. 7, 2008) ("*Stoneridge* made plain that investors must show reliance upon a defendant's own deceptive conduct before that defendant, otherwise a secondary actor, may be found primarily liable . . . . Nothing about Parmalat's disclosures describes any defendant's own conduct, much less conduct that was deceptive."); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 476-77 (S.D.N.Y. 2005); *Rich v. Maidstone Fin., Inc.*, 2002 WL 31867724, at *7 (S.D.N.Y. Dec. 20, 2002).

---

[2] Plaintiffs' opposition brief does not mention a Rule 10b-5(b) claim against Mr. Outridge and Plaintiffs' main opposition brief (incorporated by reference in Pl. Mem.) makes clear that the VR Plaintiffs are only alleging a violation against Grant Thornton under Rule 10b-5(b). (Pl. Main Opp. at 18) Accordingly, VR Plaintiffs' Rule 10b-5(b) claim against Mr. Outridge should be dismissed. The CR Compl. and CA Compl. did not include any Rule 10b-5(b) claim.

[3] Mr. Outridge incorporates by reference the arguments made in Ivan Kline's July 23, 2008 letter, Richard Rosen's July 30, 2008 letter and Richard Cashman's August 20, 2008 letter ("Cashman letter"), all addressed to the Court.

2

Incredibly, Plaintiffs' opposition brief simply ignores their well-established burden to allege with particularity deceptive acts that Mr. Outridge himself engaged in and misstates the standard required to establish primary liability under Rule 10b-5. (Pl. Mem. at 3) In their lengthy Complaints, their 125-page main opposition brief and their 12-page opposition to Mr. Outridge's motion, Plaintiffs have not made any particularized allegations as to any deceptive acts that Mr. Outridge allegedly engaged in and on which Plaintiffs relied. Rather, Plaintiffs refer the Court to 17 pages in their main opposition brief that allege how RCM – not Mr. Outridge – engaged in deceptive acts relating to customer agreements, customer statements, trading confirmations, customer accounts and RCM's alleged violations of federal laws concerning use of customer securities. (Pl. Mem. at 2)[4]

Your Honor dismissed the first complaint in the brokerage customer securities putative class action against various other Officer Defendants on the ground that "the complaint fails to make sufficient allegations as to deception, the most basic element of fraud." *See In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.,* 2007 WL 2694469, at *12 (S.D.N.Y. Sept. 13, 2007). As this Court has articulated, absent a fiduciary duty,[5] "there must be some conduct or representation by the fraudster that deceives the victim – that is, the defendant's conduct must create in the victim a sense that things are otherwise than they are. . . ." *Id.* at *7. In *Finnerty*, the Second Circuit cited Your Honor's decision, and held that:

> The language of § 10(b) gives no indications that Congress meant to prohibit any conduct not involving manipulation or deception . . . Broad as the concept of "deception" may be, it irreducibly entails some act that gives the victim a false impression. Theft not accomplished by deception (e.g., physically taking and carrying away another's property) is not fraud absent a fiduciary duty.

---

[4] In their opposition, Plaintiffs disregard their failure to allege that Mr. Outridge was involved in preparing or disseminating the Customer Agreements, customer account statements, or trade confirmations, or that Mr. Outridge made any representations whatsoever to any of the Plaintiffs or had any communications at all with any of Refco's customers. (*See* Outridge Mem. at 13-14)

[5] Plaintiffs' do not, and cannot, allege that Mr. Outridge owed them a fiduciary duty, for the reasons in Outridge Mem. (at 12) and the THL Defendants' Reply Memorandum of Law at Point III, incorporated herein by reference. In their opposition (at 3), Plaintiffs simply refer the Court to the duty that **RCM** allegedly owed them, citing Pl. Main Opp. at 37-42.

3

*Finnerty*, 533 F.3d at 148 (citing *In re Refco Capital*, 2007 WL 2694469, at *8.)

The Second Circuit concluded that:

> To impose securities fraud liability here, absent proof that Finnerty conveyed a misleading impression to customers, would pose 'a risk that the federal power would be used to invite litigation beyond the immediate sphere of securities litigation and in areas already governed by functioning and effective state-law guarantees.'

*Id*. at 149 (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlantic, Inc.*, 128 S. Ct. 761, 771 (2008)).

Plaintiffs ignore *Finnerty* in their opposition brief. In their August 6, 2008 letter to the Court, Plaintiffs address only their allegations that Refco, RCM and/or RSL engaged in deceptive conduct. This does not rectify their failure to allege deceptive conduct by Mr. Outridge on which Plaintiffs relied. (*See* discussion in Cashman Letter.)

Relying on *SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (*citing Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994)), Plaintiffs misstate the standard applicable here, claiming that "primary liability as to a scheme under Section 10(b) [only] requires pleading that defendant had knowledge of the fraud and assisted in its perpetration." (Pl. Mem. at 9) This standard, however, was articulated prior to the Supreme Court's decision in *Central Bank,* which eliminated aiding and abetting liability under Section 10(b). As courts in this district have made clear:

> [*Azrielli*] was decided before *Central Bank* and did not distinguish between primary and aiding and abetting liability. Indeed, the elements set forth in the earlier opinion and quoted in *First Jersey Securities* – knowledge coupled with assistance – practically define aiding and abetting, not a primary violation.

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 500–01 (S.D.N.Y. 2005). The Second Circuit has "effectively overruled" *First Jersey* by its later decisions of *Wright v. Ernst & Young LLP*, 152 F.3d 169, 176 (2d Cir. 1998), and *Shapiro v. Cantor*, 123 F.3d 717, 720-21 (2d Cir. 1997). *Ravens v. Republic N.Y. Corp.*, 2002 WL 1969651, at *11 n.12 (E.D. Pa. April 24, 2002). The *Wright* and *Shapiro* decisions make clear that *First Jersey* is applicable only to those cases that are factually analogous, i.e., cases that involve claims against an alleged "mastermind" of a fraud who directs subordinates to make

4

false and misleading statements. Plaintiffs do not – nor can they – allege that Mr. Outridge was a "mastermind" of the alleged schemes, which they admit began years before he came to RCM, or that he directed subordinates to make deceptive statements to Plaintiffs. In fact, they plainly allege that Mr. Bennett and Mr. Maggio were the masterminds of these schemes. (*See* VR Compl. ¶¶ 126, 255, 257, 266; CA Compl. ¶¶ 126, 171, 172; CM Compl. ¶¶ 173, 175).

Unable to refute the showing in our moving brief that Plaintiffs failed to allege that Mr. Outridge engaged in a deceptive act and that Plaintiffs relied on any deceptive conduct by Mr. Outridge, Plaintiffs' opposition brief simply ignores (and therefore concedes) these issues. Given Plaintiffs' complete failure to allege deception by Mr. Outridge, the Court need go no further in its analysis of Plaintiffs' Section 10(b) claims against Mr. Outridge. *See In re Refco Capital,* 2007 WL 2694469, at *12 ("there is no need to reach the defendants' other arguments pertaining to other elements of fraud, or the arguments relating to control liability, because no primary violation of the securities laws has been alleged.")

### 2. Plaintiffs Have not Identified any Alleged Facts that Mr. Outridge Was an Active Participant in the Alleged Schemes

Plaintiffs claims against Mr. Outridge are based entirely on a scheme liability theory. However, Plaintiffs' opposition brief does not identify any particularized allegation that Mr. Outridge engaged in any act that furthered the schemes set forth in the Complaints. The Complaints do nothing more than make generalized allegations that Mr. Outridge "directly participated in, orchestrated and supervised the RCM Securities Scheme alleged herein." (*See* Outridge Mem. at 10.) These broad brush, conclusory allegations do not state a claim against Mr. Outridge for a violation of Rule 10b-5(a) or (c).

Mr. Outridge's motion to dismiss (at 10) also states that the: "Complaints are bereft of any specific factual allegations that Mr. Outridge approved or *directed* or *conducted* any act constituting the alleged fraud." (Emphasis added) Faced with the insufficiencies of their own allegations, Plaintiffs now impermissibly resort to making new allegations against Mr. Outridge in their opposition papers that are

5

not in their Complaints. Using language strikingly similar to the language in Mr. Outridge's brief, Plaintiffs now conclusorily claim that Mr. Outridge "*direct[ed]* and *implement[ed]* transfers of the stolen customer funds." (Pl. Mem. at 4) Not only is it inappropriate to raise new allegations that were not included in the Complaints,[6] even if the Court were to consider this allegation, Plaintiffs still have not properly alleged a Section 10(b) violation as against Mr. Outridge. Notably, Plaintiffs do not allege how Mr. Outridge knew that these funds allegedly were stolen from customers. There is no allegation that Mr. Outridge had anything to do with any of RCM's customers or their accounts, or was involved with customer transactions, whether valid or invalid, in any way. Nor do Plaintiffs identify which funds Mr. Outridge allegedly transferred or when these alleged transfers were made. Any allegation that Mr. Outridge orchestrated or supervised the alleged transfer of the proceeds of sales of securities in customer accounts would fly in the face of the established facts (i.e., that Bennett and Maggio were the masterminds of the alleged schemes).

Any allegation that Mr. Outridge was involved in or had knowledge of the practice of moving securities out of customer accounts would be belied by the testimony of Thomas York that Plaintiffs cite in their Main Opp. Mem. (at 57), that the practice "was discussed openly among relevant members of Refco management." York's failure to mention Mr. Outridge in his three days of testimony strongly indicates that Mr. Outridge was not one of the relevant members of Refco management who discussed and had knowledge of this practice.[7]

This leaves Plaintiffs with their broad brush allegations against the Officer Defendants. Those allegations are insufficient to allege a violation of Section 10(b) against Mr. Outridge for the reasons stated in his moving brief (at 9-14) and in Point I(A)(1) of Defendants Joseph J. Murphy and William M.

---

[6] *Butvin v. DoubleClick, Inc.*, 2000 WL 827673, at *13 (S.D.N.Y. June 26, 2000) (citing *Wright*, 152 F.3d at 178, declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss"), aff'd, 22 Fed. Appx. 53 (2d Cir. 2001).

[7] *See* the Declaration of Jessica Mastrogiovanni in Support of Defendant Outridge's Motion To Dismiss the Complaints, dated June 18, 2008 ("Mastrogiovanni Decl.") at ¶ 2 and Exh. A.

6

Sexton's Reply Memorandum of Law In Further Support of Their Motion to Dismiss ("Murphy/Sexton Reply Mem."), incorporated by reference herein.

### B. Plaintiffs also Have Failed To Plead Scienter as to Mr. Outridge

Plaintiffs do not plead facts (i) demonstrating that Outridge possessed a personal motive and had sufficient opportunity to commit the alleged schemes or (ii) giving rise to strong circumstantial evidence of conscious misbehavior or recklessness by Mr. Outridge in not knowing that Plaintiffs allegedly had been deceived about RCM's use of their assets.  (*See* Outridge Mem. at 16-22.; Murphy/Sexton Reply Mem. at 6-7)  Therefore, Plaintiffs have not met their burden to plead facts that create a strong inference of Mr. Outridge's scienter that is at least as compelling as the opposing inferences of his non-fraudulent intent.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2510 (2007).

In their opposition, Plaintiffs conceded that they cannot establish scienter based on motive as to Mr. Outridge, by not responding to Mr. Outridge's arguments concerning their failure to allege that he had any motive to defraud RCM's customers.  Plaintiffs have not, and cannot, identify a single benefit that Mr. Outridge received from Refco, or any of its affiliates, that might have motivated Mr. Outridge to participate in a fraud.  (*See* Outridge Mem. at 17-19.)

Plaintiffs' failure to plead motive as to Mr. Outridge leaves them only with the argument that they have adequately pled scienter "by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir. 2001); *see also* Outridge Mem. at 19-22 (stating the standards for pleading scienter through circumstantial evidence and discussing the insufficiencies of Plaintiffs' allegations concerning Mr. Outridge).  In short, Plaintiffs must plead facts demonstrating that Mr. Outridge (i) was aware of the allegedly deceptive misrepresentations made to Plaintiffs, and (ii) knew of information revealing the falsity of those misrepresentations.  Plaintiffs' opposition brief

7

does not identify where they have made such allegations as against Mr. Outridge, because such allegations do not – and cannot – exist.

### 1. The Allegations Concerning Mr. Outridge's Position, Involvement and Control over RCM's Internal Operations Do Not Give Rise to a Strong Inference of Scienter

Plaintiffs' Complaints and opposition brief make clear that their allegations of Mr. Outridge's scienter are based principally on Mr. Outridge's position as CFO of RCM for a little over a year, from which they allege that he knew or should have known of the alleged schemes. (Pl. Mem. at 4-5) These allegations are insufficient. *See Am. Fin. Int'l Group–Asia, LLC v. Bennett*, 2007 WL 1732427, at *8 (S.D.N.Y. June 14, 2007) (Lynch, J.) ("scienter cannot be inferred solely from. . . the defendants' . . . executive managerial position.").

Plaintiffs fail to allege that Mr. Outridge had any knowledge that transactions at the customer level – with which he was not involved – were fraudulent transactions. As (1) the alleged schemes had been going on for years when Mr. Outridge arrived at RCM in mid-2001 and (2) the transactions described in the Complaints (i.e., the sale and hypothecation of securities) were typical of valid RCM business transactions, Mr. Outridge would have had no reason to suspect that the transactions were not done in the ordinary course of RCM's business, if he knew of them at all. Merely alleging, as Plaintiffs do (Pl. Mem. at 4), that defendants had access to information is insufficient. *See Kinsey v. Cendant Corp.*, 2005 WL 1907678, at *5 (S.D.N.Y. Aug. 10, 2005) ("access . . . to reports" does not establish scienter); *In re AOL Time Warner Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 224 (S.D.N.Y. 2004). The allegation that Mr. Outridge had an obligation as CFO to monitor RCM's financial status (Pl. Mem. at 5) does not create a strong inference that he knew that the allegedly fraudulent transactions were fraudulent.

Plaintiffs have similarly failed to set out "facts regarding how and when [Mr. Outridge] received [the] information which [he] allegedly recklessly ignored." *Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558-59 (2d Cir.

8

1979)). Moreover, the allegations do not explain how the data would have alerted him to the alleged wrongdoing. *See In re Citigroup, Inc. Sec. Litig.,* 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("the Complaint is devoid of facts establishing that Weill [Citigroup's CEO] knew such transactions to be fraudulent"), aff'd sub nom. *Albert Fadem Trust v. Citigroup Inc.*, 165 Fed. Appx. 928 (2d Cir. 2006).

More specifically, Plaintiffs fail to allege that Mr. Outridge was aware that (a) the Customer Agreements governed RCM's relationship with its customers; (ii) the Customer Agreements limited the way in which RCM could use customers' funds; (iii) RCM allegedly used the customers' securities in a way that was prohibited in the Customer Agreements; and (iv) RCM's use of the customers' securities was so systematic as to constitute a fraud. As in *Citigroup*, Plaintiffs fail to plead any facts demonstrating that Mr. Outridge knew or should have known that any laws or the terms of any agreements were being violated or that RCM customers were being deceived. *See, e.g., id.* (holding that Thomson's, Citigroup's CFO's, "awareness of a particular transaction is insufficient to show that he acted with scienter.")[8]

### 2. The Alleged Magnitude of the Alleged Schemes Fails To Give Rise to a Strong Inference of Scienter on Behalf of Mr. Outridge

Plaintiffs improperly rely on the magnitude, scope and financial significance of the alleged schemes in an attempt to establish a strong inference of scienter by Mr. Outridge. (Pl. Mem. at 6) Plaintiffs ignore the cases cited in our moving brief (at 20) holding that allegations concerning the "sheer magnitude and size of the improper transfers," or that a defendant had "access to inside information," fail to raise a strong inference of scienter on the part of the Officer Defendants. *See In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005) (quoting *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 21488087, at *7 (S.D.N.Y. June 25, 2003) ("Plaintiffs argue also that the size of the

---

[8] The Court should reject Plaintiffs' improper attempt to prove scienter by Mr. Outridge on the basis that he was named on the government's list of unindicted co-conspirators in connection with the criminal actions against Bennett, Trosten and Grant (Pl. Mem. 5). Plaintiffs cannot refer to matters outside the Complaints to meet their pleading burden. Moreover, the purpose of a list of unindicted co-conspirators is to permit the prosecution to introduce out-of-court statements in a criminal proceeding and the list is not admissible against Mr. Outridge in any proceeding. (*See* Fed. R. Evid. 801(d)(2)(E)). Mr. Outridge has not been named in any criminal matter (or indeed any other civil matter) relating to Refco.

9

restatement alone constitutes strong evidence of scienter. This argument is without merit.")). Indeed, cases cited in Plaintiffs' opposition (at 8) hold that while the magnitude of the fraud can provide background to the scienter inquiry, "magnitude . . ., by itself, is insufficient to meet the standard[s]" of the PSLRA. *In re Livent, Sec. Litig.*, 148 F. Supp. 2d 331, 372 (S.D.N.Y. 2001).

Plaintiffs' argument that there is a strong inference that Mr. Outridge knew or was reckless in not knowing about the alleged schemes because the schemes allegedly involved a "core component of RCM's business" is similarly insufficient as against Mr. Outridge.[9] (Pl. Mem. 7) The "core component" of RCM's business involved in the alleged scheme and deception is the handling of customers and their accounts. But the Complaints do not allege, nor could they, that Mr. Outridge as controller or CFO was responsible for customers or their accounts.

Moreover, as set forth in his moving brief (at 21), the alleged practices were well underway before Mr. Outridge joined RCM in June of 2001. Accordingly, these practices were engrained in and part of RCM's business practices by the time Mr. Outridge arrived at RCM, and were ever more deeply rooted in RCM's practices by the time Mr. Outridge was named CFO in March of 2004. Plaintiffs do not and cannot allege why Mr. Outridge would have had reason to suspect that the transactions described in the Complaints, which were typical of valid business transactions RCM engaged in, were anything other than transactions made in the ordinary course of RCM's business.

Plaintiffs' conclusory allegations that Mr. Outridge orchestrated and supervised the transfer of proceeds from sales of customer's securities to other Refco entities is insufficient to establish scienter, given that such transactions serve a self-evident business purpose and the practice of making inter-company loans had been in place for many years before Mr. Outridge was named CFO of RCM. It is

---

[9] The cases Plaintiffs cite in support of this argument (Pl. Mem. 7 and n.25) are not applicable or are no longer good law. Every one of those cases predates the Supreme Court's decision in *Tellabs*, which clarified that in order to plead a strong inference of scienter, the facts alleged must be sufficient to create an inference that is "at least as compelling as any opposing inference one could draw from the facts alleged," a stricter standard than those courts (all but one of which were not within this Circuit) applied in those cases. *Tellabs*, 127 S. Ct. at 2510.

equally plausible that he thought they were legitimate inter-company loans.[10] Moreover, plaintiffs have not pled with particularity facts creating a strong inference that Mr. Outridge knew prior to October 2005 that the Refco subsidiaries to which RCM customer assets allegedly were loaned could not satisfy their obligations.

## POINT II

### PLAINTIFFS HAVE NOT PLED A RULE 10B-16 CLAIM AGAINST MR. OUTRIDGE

Plaintiffs' opposition brief fails to address the fact that Mr. Outridge is not a broker-dealer. Their argument (Pl. Main Opp. at 100) that Rule 10b-16 can apply to individuals who are not broker-dealers ignores the plain language of the Rule itself. Moreover, Plaintiffs do not address the fact that Mr. Outridge was not alleged to be responsible for making disclosures to RCM's customers and did not have any interactions with the allegedly injured Plaintiffs. For these reasons and those set forth in Outridge Mem. (at 22-27) and in Philip Silverman's Reply Memorandum Of Law In Further Support Of His Motion To Dismiss at Point IV, incorporated by reference herein, Plaintiffs' Rule 10b-16 claim against Mr. Outridge must be dismissed.

## POINT III

### PLAINTIFFS FAIL TO STATE A CONTROL PERSON LIABILITY CLAIM UNDER SECTION 20(A) OF THE EXCHANGE ACT AS TO MR. OUTRIDGE

A.  **The Complaints Do Not Allege that Mr. Outridge Exercised the Control Required To State a Section 20(a) Violation against Him**

Plaintiffs' conclusory allegations that Mr. Outridge had power to control Refco and RCM are insufficient to state a claim against him for control person liability under Section 20(a). Incorrectly stating the pleading standard, Plaintiffs assert that their allegations of control based on Mr. Outridge's

---

[10] Even if Plaintiffs had alleged that Mr. Outridge was aware that RCM customer assets were used to fund intercompany loans (which they did not), Mr. Outridge would have also believed that practice to be reasonable and permissible, particularly because RCM was held out as an unregulated entity not subject to segregation and net capital requirements. *See In re Refco Capital,* 2007 WL 2694469, at *9 (holding that similar allegations were insufficient to demonstrate deception where RCM held itself out as unregulated and not subject to segregation and net capital requirement.)

11

position at RCM are sufficient because they need only show that "it is at least plausible that plaintiffs could develop some set of facts that would pass muster." (Pl. Mem. at 11)  Plaintiffs rely on *In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 352 (S.D.N.Y. June 13, 2006), which they misleadingly claim quotes the Supreme Court's <u>subsequent</u> decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-67 (2007).  In fact, the Court in *Global Crossing* relied on a portion of the Second Circuit's *Twombly* decision that was reversed by the Supreme Court.  The Supreme Court actually held that Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1964-67.  Plaintiffs have not done so.

     Plaintiffs' Rule 20(a) claim rests on an allegation that because of Mr. Outridge's positions at RCM (as controller from June 2001 and CFO from early 2004 to August 2005), the Court can infer that he possessed power to control RCM.  However, Your Honor has held that "[O]fficer or director status alone does not constitute control." *In re Global Crossing, Ltd., Sec. Litig.*, 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005).  Plaintiffs' opposition (at 10, n.29) refers to "key roles he played in Refco's management," but the few allegations concerning Mr. Outridge in the Complaints do not allege facts supporting that claim and the paragraphs Plaintiffs cite (at 10, n.29) refer to the Officer Defendants as a group and their alleged conflicts of interest and goals of enriching themselves, which do not apply to Mr. Outridge.

     In a conclusory fashion, Plaintiffs also assert that Mr. Outridge exercised control as a result of his supposed "direct involvement" in Refco's management and its "day-to-day operations, including its finance and accounting functions." (Pl. Mem. at 10)  These allegations are belied by Plaintiffs' allegations that *other* Officer Defendants (including Bennett and Maggio) had substantial control over Refco and the fact that Mr. Outridge was not named in any of Refco's SEC filings, because he was not an officer who ever had control over Refco's operations.[11]  (*See* Outridge Mem. at 28-29 and n.9)[12]

---

[11] *See* the Declaration of Richard Cashman In Support of Motion To Dismiss by Defendant Philip Silverman, dated February 21, 2009, and Exhs. A-F therein ("Cashman Decl.").

Plaintiffs' allegations of control also are insufficient because they do not allege that Mr. Outridge had control over the transactions that allegedly constitute primary violations of Rule 10b-5 by RCM (i.e., the acceptance of Plaintiffs' securities, representations to Plaintiffs as to how Refco would manage those securities, and the conversion of these securities). At most, Plaintiffs conclusorily allege that Mr. Outridge controlled the transfer of the proceeds of the conversion to other Refco entities, which is not a deceptive act in connection with the purchase and sale of securities and thus not a primary violation of Section 10(b) or Rule 10b-5. *See In re Global Crossing*, 2005 WL 1907005, at *12; *Wallace v. Buttar*, 239 F. Supp. 2d 388, 396 (S.D.N.Y. 2003) (rejecting Section 20(a) liability claim against a company president absent a showing that he possessed control over the transactions in question), *rev'd on other grounds*, 378 F.3d 182 (2d Cir. 2004); *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) (failure to plead facts suggesting control over stock misappropriation compelled dismissal of claim against treasurer).

### B.    Plaintiffs Also Fail To Adequately Plead Culpable Participation by Mr. Outridge

Mr. Outridge incorporates by reference Point III(B) of the Murphy/Sexton Reply Mem. setting forth the authority requiring Plaintiffs to adequately plead culpable participation by Mr. Outridge to establish a Section 20(a) claim. For the reasons stated in Point I above and in Outridge Mem. (at 29-30), Plaintiffs have failed to allege culpable participation by Mr. Outridge.

---

[12] In their opposition (at 10), Plaintiffs refer the Court to Pl. Main Opp. (at 86-93) for the reasons they have adequately alleged claims for control person liability against Mr. Outridge. These pages do not even refer to Mr. Outridge, and the allegations of control concerning other Officer Defendants described therein (at 91-92) do not apply to him. Plaintiffs allege control based on: "Executive Employment and non-Competition Agreements," conclusions by this Court in "the Stockholder class action," and "prepara[tion], approv[al] and sign[ing] Refco's SEC filings." Plaintiffs do not allege that Mr. Outridge participated in any executive employment or non-competition agreement or that he prepared, approved or signed any SEC filings. In addition, Mr. Outridge was not named as a defendant in the Stockholder class action, so any conclusions in that action do not apply to him.

# POINT IV

## PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD SHOULD BE DENIED AS TO MR. OUTRIDGE

Plaintiffs should not be permitted to amend the Complaints against Mr. Outridge for at least four reasons. First, such amendment would be futile, because Mr. Outridge had no culpable involvement in the alleged schemes to deceive customers, as shown by the fact that he was not identified at all by Thomas York ("York"), a former Executive Vice President of Refco Capital Markets, Ltd. on its Global Execution and Finance Desk, who gave detailed testimony about how the schemes alleged in the Complaints worked,[13] nor was he named in any of Refco's SEC filings because he was not an officer who ever had control over Refco's operations. *See Acito v. IMCERA Group,* 47 F.3d 47, 55 (2d Cir. 1995) (leave to replead may be denied when further amendment would be futile).

Second, leave to replead should be denied because Plaintiffs have already had two opportunities to plead securities violations against Officer Defendants and are not entitled to a third. In naming Mr. Outridge as a defendant in the Complaints, Plaintiffs have merely re-packaged the same insufficient allegations that this Court has already dismissed against the defendants named in the initial class action complaint. Although this Court provided guidance as to how Plaintiffs might correct the insufficiencies in their allegations that were similar to those now lodged against Mr. Outridge, Plaintiffs have failed to state a claim against him.

Third, Plaintiffs' counsel has long had access to all of Refco's records, including employees' e-mails and other documents. (*See* VR Compl. ¶ 1; CM Compl. ¶ 1 (describing all the information available to Plaintiffs' counsel)). Therefore, Plaintiffs have had an adequate opportunity to discover any evidence that might support particularized allegations against Mr. Outridge, yet have failed to do so. *See Mooney v. Vitolo*, 435 F.2d 838, 839 (2d Cir. 1970) (leave to replead negligence and fraud claims

---

[13] *See* Mastrogiovanni Decl. at ¶ 2 and Exh. A.

14

against a corporation's management denied where plaintiffs "have had extensive access to the records and files" of that corporation.).

Fourth, their opposition fails to provide a proposed amended pleading or to otherwise specify how they would cure the pleading deficiencies as to Mr. Outridge. *See Bankr. Trust of Gerard Silliam v. Refco Group, LLC*, 2006 WL 2129786, at *4-7 (S.D.N.Y July 28, 2006) (denying plaintiffs' request to replead where the request was made "informally in response to defendants' motions to dismiss" and plaintiffs failed to show how they would cure the deficiencies in their complaint).

## CONCLUSION

For the foregoing reasons and the reasons set forth in Mr. Outridge's moving papers, the Court should dismiss the Complaints in their entirety as to Mr. Outridge, with prejudice.

Dated: New York, New York
      August 22, 2008

Respectfully submitted,

PROSKAUER ROSE LLP

By: /s/Claire P. Gutekunst
    Claire P. Gutekunst
    cgutekunst@proskauer.com
    Jessica Mastrogiovanni
    jmastrogiovanni@proskauer.com
1585 Broadway
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Defendant Richard N. Outridge*

15